**REVISED - March 22, 2001**

**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-20228

DAVID RUIZ; ET AL.,

Plaintiffs-Appellees-Cross-Appellants-Appellees,

versus

UNITED STATES OF AMERICA,

Intervener Plaintiff-Appellee-Cross-Appellant,

versus

GARY L. JOHNSON, Director, Texas Department
of Criminal Justice, Institutional Division; ALLEN
B. POLUNSKY; CAROLE S. YOUNG; JOHN R.
WARD, Member, Texas Board of Criminal Justice;
JOHN DAVID FRANZ; NANCY PATTON, Member,
Texas Board of Criminal Justice, CAROL S. VANCE,
Member, Texas Board of Criminal Justice; PATRICIA
DAY; ALFRED C. MORAN; ALFRED M.
STRINGFELLOW,

Defendants-Appellants-Cross-Appellees,

REPRESENTATIVE JOHN CULBERSON;
SENATOR J. E. "BUSTER" BROWN,

Intervener Defendants-Appellants-Cross-Appellees.

Appeal from the United States District Court
for the Southern District of Texas, Houston

March 20, 2001

Before REYNALDO G. GARZA, STEWART, and DENNIS, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Texas prison officials appeal from the district court's denial of their motions to terminate prospective relief pursuant to 18 U.S.C. §§ 3626(b)(1) and (b)(2). For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

The almost 30-year history of this case is well known within this circuit. In 1972, David Ruiz and other inmates ("inmates") filed civil rights claims pursuant to 42 U.S.C. § 1983 against the director of the Texas Department of Corrections ("TDC"), seeking declaratory and injunctive relief for unconstitutional conditions and practices. The claims were consolidated and certified as a class in 1974, and in 1980, the district court issued an opinion finding numerous constitutional violations. The court issued a consent decree in 1981 that this Court affirmed in part in 1982. The parties continued to modify the remedial measures, and ultimately, the district court approved a proposed judgment by the parties in 1992. This judgment replaced previous orders and compliance plans and resulted in the termination of the district court's jurisdiction in certain substantive areas. However, the court retained jurisdiction in other areas.

On March 25, 1996, the director of the Institutional Division of the Texas Department of Criminal Justice ("TDCJ-ID")[1] and members of the Texas Board of Criminal Justice ("the defendants"), filed a motion to vacate the 1992 judgment pursuant to Fed. R. Civ. P. 60(b)(5).[2] One

---

[1]TDCJ-ID is the successor to TDC.

[2]Rule 60(b)(5) provides that

month later, on April 26, 1996, Congress enacted the Prison Litigation Reform Act ("PLRA"). Under the PLRA, federal courts may grant or terminate prospective relief in prison litigation, subject to delineated standards. See 18 U.S.C. § 3626. Courts may refuse to terminate prospective relief only upon making specific findings regarding the continued necessity of such relief. See id.

Following the enactment of the PLRA, the defendants filed a motion to terminate the 1992 consent decree pursuant to 18 U.S.C. § 3626 (b)(2), which provides for the immediate termination of prospective relief.[3] Specifically, § 3626(b)(2) provides:

> (2) Immediate termination of prospective relief. In any civil action with respect to prison conditions, a defendant or intervener shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence of a finding by the court that the relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right.

18 U.S.C. § 3626(b)(2). Two years after the enactment of the PLRA, the defendants filed a subsequent motion under § 3626(b)(1)(A)(iii), the two-year termination provision of the PLRA. That section provides:

> (1) Termination of prospective relief. . . (A) In any civil action with respect to prison conditions in which prospective relief is ordered, such relief shall be terminable upon the motion of any party or intervener . . .
> (iii) in the case of an order issued on or before the date of enactment of the Prison Litigation Reform Act, 2 years after such date of enactment.

---

> [o]n motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding [where] the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

FED. R. CIV. P. 60(b)(5).

[3]Eventually, the defendants dropped their Rule 60(b)(5) motion.

3

18 U.S.C. § 3626(b)(1)(A)(iii). Both termination provisions, pursuant to which the defendants filed

their motions, are subject to a limitation provision, which states:

> (3) Limitation. Prospective relief shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation.

18 U.S.C. § 3626(b)(3).

After various disputes, which included appeals to this Court, on March 1, 1999, the district

court declared that the PLRA's termination provisions violate separation of powers principles and

due process.[4] Alternatively, the court found that TDCJ-ID suffers from systemwide constitutional

violations in the areas of inmate protection, use of force, and administrative segregation. The court

made the alternative findings in the event this Court finds the PLRA's termination provisions

constitutional. The court did not find constitutional violations in the areas of medical and psychiatric

care.

On appeal, the defendants and the United States as Intervener-Plaintiff-Appellee-Cross-

---

[4]On October 28, 1998, the defendants petitioned this Court for a writ of mandamus to compel the district court to rule immediately on its motion to terminate prospective relief and to terminate extra-constitutional aspects of the 1992 judgment. On November 4, 1998, the district court set a fact-finding hearing on the defendants' motions to terminate prospective relief for January 21, 1999. This Court denied the petition for a writ of mandamus, but ordered the district court to rule on the defendants' motions no later than March 1, 1999. Having denied a similar petition by the defendants 16 months prior, we stated: "We are dismayed by the amount of delay the district court has allowed for discovery related to the defendants' motion to vacate. We would be inclined to grant the writ of mandamus and order the district court to rule instanter, were we not aware that the district court has scheduled its evidentiary hearing in this matter just one month from now, on January 21, 1999."

According to the district court, the fact-finding hearing was necessarily truncated to comply with this Court's March 1st deadline, and it was forced to limit each party to 50 hours of testimony.

Appellant argue that the district court erred in finding the termination provisions of the PLRA unconstitutional. The defendants also contend that the district court erred in its alternative finding of systemwide constitutional violations. The inmates claim that this Court does not have jurisdiction over the alternative order and, if it does, the district court erred in finding no constitutional violations in the areas of medical and psychiatric care.

## DISCUSSION

I.      Jurisdiction

This Court asked the parties to brief the issue of our jurisdiction to hear the appeal of the district court's order denying the defendants' motions to terminate the 1992 consent decree. The defendants and the inmates agree that this Court has jurisdiction over the denial of the motions to terminate on constitutional grounds under 28 U.S.C. § 1292(a)(1)[5] as a refusal to dissolve an injunction. However, the inmates argue that the findings of Eighth Amendment violations in the areas of protection from harm, use of force, and administrative segregation are not appealable because they are a basis for directing the parties to confer and attempt to reach an agreement on a form of judgment remedying the violations, not a basis for denial of the motions. The inmates further contend that the contingent alternative order is not appealable because it will become effective only if this Court reverses the district court's decision on the statutory and constitutional issues. According to the inmates, the alternative order merely establishes a process for replacing the final judgment with

_____

[5]Section 1292(a)(1) provides that

[e]xcept as provided in subsections (c) and (d) of this section, the courts of appeal shall have jurisdiction of appeals from . . . [i]nterlocutory orders of the district courts of the United States . . . or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

prospective injunctive relief and is only a predecessor to a final decree.

Both the primary and alternative orders give the parties an opportunity to attempt to reach an agreement on a proposed form of judgment. Thus, the inmates' argument that the alternative order is somehow different in this respect is unavailing. The district court expressly denied the motions to terminate on two grounds: (1) the constitutionality of the termination provisions of the PLRA and (2) ongoing constitutional violations in TDCJ-ID. Thus, this Court has jurisdiction over the appeal of both orders under 28 U.S.C. § 1292(a)(1) as refusals to dissolve an injunction.

II.     Constitutionality of the Termination Provisions of the PLRA

We review the district court's determination of the constitutionality of the PLRA's termination provisions de novo. See C&B Sales & Service, Inc., 95 F.3d 1308, 1312 (5th Cir. 1996).

The defendants and the United States argue that the district court erred in finding that the termination provisions of the PLRA violate separation of powers principles and due process. We agree and find that the termination provisions are not unconstitutional. In upholding the constitutionality of the PLRA's termination provisions, we join each of our sister circuits that has considered this issue.[6]

_____

[6]Circuit court decisions upholding the constitutionality of the PLRA's termination provisions include: Gilmore v. State of California, 220 F.3d 987 (9th Cir. 2000); Berwanger v. Cottey, 178 F.3d 834 (7th Cir. 1999); Imprisoned Citizens Union v. Ridge, 169 F.3d 178 (3rd Cir. 1999); Nichols v. Hopper, 173 F.3d 820 (11th Cir. 1999); Benjamin v. Jacobson, 172 F.3d 144 (2nd Cir. 1999) (en banc); Hadix v. Johnson, 133 F.3d 940 (6th Cir. 1998); Dougan v. Singletary, 129 F.3d1424 (11th Cir. 1997); Gavin v. Branstad, 122 F.3d 1081 (8th Cir. 1997); Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649 (1st Cir. 1997); and Plyer v. Moore, 100 F.3d 365 (4th Cir. 1996).

The Ninth Circuit withdrew its opinion holding that the termination provisions of the PLRA are unconstitutional, finding the motion before it to terminate a consent decree moot. See Taylor v. United States, 181 F.3d 1017, 1018 (9th Cir. 1999).

A.      Separation of Powers

The district court found that the two termination provisions of the PLRA violate separation of powers principles on two independent bases.  First, the court found that the two provisions require the reopening of final judgments entered by Article III courts.  Second, the court found that the termination provisions unconstitutionally prescribe a rule of decision in a discrete group of Article III cases.

1.      The District Court's Finding That the Termination Provisions Require the Reopening of a Final Judgment Entered by an Article III Court

The Supreme Court has established that the separation of powers principles rooted in Article III prohibit Congress from "retroactively commanding the federal courts to reopen final judgments." Plaut v. Spendthrift Farm, Inc., 514 U.S. 211, 218-19, 115 S. Ct. 1447, 131 L. Ed. 2d 328 (1995). In Plaut, the plaintiffs' federal securities fraud claim for monetary damages had been dismissed as untimely under the statute of limitations after the Supreme Court determined the applicable statute of limitations in cases like theirs in Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 111 S. Ct. 2773, 115 L. Ed. 2d 321 (1991).  Plaut, 514 U.S. at 213.  After Lampf, Congress passed a statute under which cases that had been dismissed under Lampf could be reinstated.  Id.  The Court found that the statute clearly violated separation of powers principles in that it was retroactive legislation "requir[ing] its own application in a case already finally adjudicated" and did "no more and no less than 'reverse a determination once made, in a particular case.'" Id. at 225.  (quoting The Federalist No. 81, at 545).  In addressing the petitioners' reliance on decisions upholding legislation that altered rights established in final judgments by non-Article III courts and decisions that "altered the prospective effect of injunctions entered by Article III courts," the Court stated that "nothing in

7

our holding today calls them into question." Id. at 232. The Court found that those cases "distinguish themselves." Id. In reference to cases wherein legislation had altered prospective injunctive relief, the Court cited Pennsylvania v. Wheeling & Belmont Bridge Co., (Wheeling Bridge II), a case decided by the Court in 1855. Id. (citing Wheeling & Belmont Bridge Co., 59 U.S. (18 How.) 421 (1855)).

In Pennsylvania v. Wheeling & Belmont Bridge Co., (Wheeling Bridge I), the Court held that a bridge across the Ohio River was too low and obstructed navigation. 54 U.S. (13 How.) 518, 521(1851). Thereafter, Congress passed a statute that declared that the bridge was lawful. Wheeling Bridge II, 59 U.S. (How.) at 429. In response to Pennsylvania's argument that Congress had unconstitutionally attempted to annul the Court's judgment in Wheeling Bridge I, the Court distinguished between monetary and injunctive relief:

> Now, we agree, if the remedy in this case had been an action at law, and a judgment rendered in favor of the plaintiff for damages, the right to these would have passed beyond the reach of the power of congress. It would have depended, not upon the public right of the free navigation of the river, but upon the judgment of the court. The decree before us, so far as it respect [sic] the costs adjudged, stands upon the same principles, and is unaffected by the subsequent law. But that part of the decree, directing the abatement of the obstruction, is executory, a continuing decree, which requires not only the removal of the bridge, but enjoins the defendants against any reconstruction or continuance. Now, whether it is a future existing or continuing obstruction depends upon the question whether or not it interferes with the right of navigation. If, in the mean time, since the decree, this right has been modified by the competent authority, so that the bridge is no longer an unlawful obstruction, it is quite plain the decree of the court cannot be enforced.

Id. at 431-32. Thus, because of the continuing nature of the injunction and because the lawfulness of the bridge depended on existing federal law, the Court found that Congress had not acted unconstitutionally in declaring the bridge a lawful structure.

In the present case, the district court found that the two termination provisions of the PLRA

8

violate separation of powers principles because they would mandate the revision of a final judgment entered by an Article III court. According to the court, a consent decree is a final judgment "immune to legislative tampering." The court recognized that each circuit court that has considered the constitutionality of the termination provisions has upheld them but also pointed out that several federal district courts had determined that the immediate termination provision is unconstitutional. According to the district court, "[t]he crux of the discrepancy between courts that have upheld and those that have struck down the termination provisions of the PLRA is the relative 'finality' of a consent decree."

The court stated that the supporters of the constitutionality of the termination provisions "have seized on an overly narrow interpretation" of Wheeling Bridge II, which the Plaut Court cited. The district court found, however, that Wheeling Bridge II actually supports the finality of the 1992 judgment in the present case because there Congress's revision of its own law, as opposed to the Constitution, had affected the viability of prospective relief. Also, the district court found that Wheeling Bridge II emphasized the private/public rights distinction such that "[p]rospective relief of a public right-one established in the first place by Congress, such as the right to navigate a river-may . . . be altered by Congress's revision of that underlying right." However, the court found that the consent decree in the instant case "involves private constitutional rights-those that Congress may not revise."

The termination provisions do not violate separation of powers principles by requiring the reopening of a final judgment entered by an Article III court. The district court was correct in its assertion that Congress may not set aside the final judgment of an Article III court by retroactive legislation. However, the separation of powers doctrine does not proscribe legislation that limits the

9

prospective effect of injunctive relief, and the remaining portions of the 1992 judgment contain only prospective injunctive relief.

The district court misplaced its reliance on Wheeling Bridge II and Plaut. The distinction between those two cases is that Congress cannot, consistent with the Constitution, modify final judgments containing no prospective relief but can constitutionally revise such judgments when they contain prospective relief. Also, we do not find that the result in Wheeling Bridge II necessarily depended on the public/private rights dichotomy.

Moreover, we disagree with the district court's assertion that Congress effectively infringed upon constitutional rights in its enactment of the termination provisions of the PLRA. Under § 3626, a court may grant new relief or refuse to terminate existing relief if it specifically finds that a current and ongoing constitutional violation exists and that prospective relief is narrowly tailored to remedy that violation. Thus, the PLRA simply restricts the court's ability to enter or continue prospective relief unless it expressly finds constitutional violations.

While the Supreme Court has not determined the constitutionality of the termination provisions of the PLRA, it has ruled on the constitutionality of § 3626(e)(2), the automatic stay provision. See Miller v. French, 530 U.S. 327, 120 S. Ct. 2246, 147 L. Ed. 2d 326 (2000). Section 3626(e)(2) provides:

> (2) Automatic Stay. Any motion to modify or terminate prospective relief made under subsection (b) shall operate as a stay during the period--
> (A)(i) beginning on the 30th day after such motion is filed, in the case of a motion made under paragraph (1) or (2) of subsection (b); or
> (ii) beginning on the 180th day after such motion is filed, in the case of a motion made under any other law; and
> (B) ending on the date the court enters a final order ruling on the motion.

The Court found that the operation of the automatic stay is mandatory and thus precludes courts from

10

exercising their equitable powers to enjoin the stay. Miller, 120 S. Ct. at 2260. However, the Court determined that the automatic stay provision does not violate separation of powers principles by suspending or reopening the judgment of an Article III court. Id. at 2258. Furthermore, the Court concluded that § 3626(e)(2) does not violate the separation of powers by prescribing a rule of decision in cases pending before Article III courts. Id. at 2259. The Court expressly left open the question of whether the termination provisions are constitutional. Id. at 2258. ("We note that the constitutionality of § 3626(b) is not challenged here; we assume, without deciding that the new standards it pronounces are effective.").

Although this Court has not directly addressed the constitutionality of the PLRA's termination provisions, we cited decisions from other circuit courts upholding § 3626(b) in our rejection of a separation of powers challenge to part of the Telecommunications Act of 1996. See SBC Communications, Inc. v. FCC, 154 F.3d 226, 245-46 (5th Cir. 1998). In SBC Communications, this Court stated that "it has long been clear that Congress may change the law underlying ongoing equitable relief, even if, as in Wheeling itself, the change is specifically targeted at and limited in applicability to a particular injunction, and even if the change results in the necessary lifting of that injunction." Id. at 245. We cited decisions from other circuits regarding the constitutionality of the termination provisions of the PLRA as part of the "great weight of authority" for this proposition. Id. ("Obviously, Wheeling survives, as all of the circuit courts to consider separation of powers challenges to the Prison Litigation Reform Act of 1995 recently concluded.").

The inmates argue that Wheeling Bridge II and SBC Communications have no bearing on the present case. They argue that monetary and injunctive relief are final judgments and point out that both are subject to modification or vacation under Fed. R. Civ. P. 60. Moreover, they reason that

11

Plaut does not limit its separation of powers analysis to monetary judgments and urge that upholding the constitutionality of the PLRA's termination provisions would deprive all injunctive decrees of finality, denigrating the judicial power of Article III courts. We disagree with these assertions for reasons already stated.

We find that the district court erred in striking down the termination provisions as being in violation of the separation of powers principle prohibiting the reopening of final judgments by Article III courts. When a court enters prospective injunctive relief and retains jurisdiction over the case, the judgment is not final. As long as the court retains the power to terminate or modify prospective injunctive relief in a particular case, Congress has the power to change the law and require that the change be applied with respect to the relief over which the court has retained power.

2.     The District Court's Finding That the Termination Provisions Unconstitutionally Prescribe a Rule of Decision in a Discrete Group of Article III Cases

The separation of powers principles inherent in Article III prohibit Congress from adjudicating particular cases legislatively. See United States v. Klein, 80 U.S. (13 Wall.) 128, 147 (1871). The statute at issue in Klein allowed for the recovery of property seized during the Civil War only if the person seeking to recover the property proved that he did not give aid or comfort to the rebellion. Id. at 131. In response to a case in which the Court found that a claimant had participated in the rebellion but was later pardoned and was thus entitled to recover his property, Congress enacted legislation providing that pardons were inadmissible to support a claim for property seized during the war. See id. at 133-34. The Court found that the legislation was unconstitutional as it purported to "prescribe rules of decision to the Judicial Department of the government in cases pending before it." Id. at 146. In Plaut, the Court stated that "[w]hatever the precise scope of Klein, . . . later decisions

12

have made clear that its prohibition does not take hold when Congress 'amend[s] applicable law.'" Plaut, 514 U.S. at 218 (quoting Robertson v. Seattle Audubon Soc'y, 503 U.S. 429,441(1992)).

Citing Klein, the district court found that the termination provisions infringed on the separation of powers because they were the result of Congress's attempt to "prescribe a rule of decision in a discrete group of Article III cases." The court reasoned that under the PLRA, as with the unconstitutional legislation in Klein, courts must discontinue relief upon proof of certain evidence. That evidence, the court asserted, is "the absence of particular findings."

The district court criticized jurists who have "utilize[d] a tortured statutory interpretation to reach a far-fetched legal fiction" that Congress merely limited the remedial jurisdiction of federal courts in order to uphold the constitutionality of the termination provisions of the PLRA. The court remarked that the legislative history of the PLRA indicates that "Congress not only knew of the constitutional problems with the statute, but passed the statute with the purpose of reopening and deciding judicially developed final judgments." The court further stated that "Congress's clear intent to set aside judgments made by federal courts in prison litigation only validates the unconstitutionality of the PLRA under the Supreme Court's decisions in Plaut and Klein."

The district court erred in striking down the PLRA's termination provisions as unconstitutionally prescribing a rule of decision in a discrete group of Article III cases. By enacting the termination provisions of the PLRA, Congress has properly invoked its legislative authority to establish applicable standards and procedural rules for courts to grant or continue prospective relief regarding prison conditions. Section 3626(b) is like any other statute in that it establishes a generally applicable legal rule and allows district courts to apply that rule to the facts of specific cases. Moreover, under § 3626(b), a court is not required to terminate existing prospective relief if it finds

13

that relief to be narrowly tailored to remedy a current and ongoing constitutional violation. Thus, the PLRA's termination provisions do not dictate results in cases pending before Article III courts.

B.    Due Process

In the district court proceedings, the inmates argued that application of the termination provisions to the 1992 judgment would infringe upon their vested rights, thus violating due process. The court found that both the inmates' separation of powers arguments and the due process argument regarding vested rights turn on the finality of the 1992 judgment and were therefore related. The court found that "[f]or the same reasons that [it] granted plaintiffs' separation of power arguments, . . . the PLRA violates plaintiffs' due process rights by interfering with their vested rights in the decree."

On appeal, the defendants argue that a prospective injunction does not give rise to a due process challenge based on vested rights because it remains subject to modification. The inmates argue that if they had known of the PLRA's requirements when they negotiated the 1992 judgment, then they would have demanded stipulations assuring that the judgment would not be terminable or sought more stringent relief than that provided by the judgment. They claim that they have vested rights in the 1992 judgment's protections and that those protections cannot be abrogated by retroactive legislation.

The district court correctly noted that both the inmates' separation of powers and due process arguments turn on the finality of the 1992 judgment. However, the court erred in finding that the termination provisions violate due process. Prospective relief does not implicate due process concerns because it remains subject to modification. Thus, the PLRA's termination provisions do not violate due process.

14

III.    Estoppel

The inmates claim that the defendants are equitably estopped from arguing that the 1992 judgment is unenforceable, as the consent decree prevented them from seeking more relief based on unconstitutional conditions. They assert that despite the "blunt statutory language" of the PLRA and "its obvious purpose," it did not abolish equitable principles. We find no merit in the inmates' equity-based arguments. When enacting the PLRA, Congress was well aware of the role of consent decrees in prison litigation and that inmates as well as prison officials had probably yielded their respective positions in order to reach agreements. Nevertheless, Congress implemented a statutory scheme whereby prison officials could request the district courts to terminate prospective relief that is no longer necessary.

IV.    Section 3626(b)(3) Findings

Although a district court's decision to terminate or continue prospective relief is to be reviewed for an abuse of discretion, where the court's decision to terminate or continue such relief "turns on the application of § 3626(b) of the PLRA, that interpretation is reviewed de novo." See Castillo v. Cameron County, Texas, 238 F.3d 339, 347 (5th Cir. 2001).

Under § 3626, unless a court makes specific written findings regarding the continuing necessity of prospective relief, it must terminate such relief. Specifically, under § 3626(b)(3), a court may not terminate prospective relief if it makes written findings based on the record that such relief (1) "remains necessary to correct a current and ongoing violation of the Federal right," (2) "extends no further than necessary to correct the violation of the Federal right," and (3) "is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3). The defendants argue that the district court erred in not making the findings required under § 3626(b)(3) and thus

15

the consent decree must be terminated.

Section 3626(b)(3) outlines specific standards to be followed when a district court considers whether to terminate a consent decree providing for prospective relief. It requires "particularized findings, on a provision-by-provision basis, that each requirement imposed by the consent decree[ ] satisfies the need-narrowness-intrusiveness criteria, given the nature of the current and ongoing violation." Cason v. Seckinger, 231 F.3d 777, 785 (11th Cir. 2000). It is not enough [for the district court] to simply state in conclusory fashion that the requirements of the consent decree[ ] satisfy those criteria." Id. Rather, "the district court should engage in specific, provision-by-provision examination of the consent decree, measuring each requirement against the statutory criteria." Id.

To comply with the standards set forth in § 3626(b)(3), a district court should first give the parties an opportunity to present evidence regarding whether or not there are any existing unconstitutional conditions at the institution that is the subject of the consent decree. See Castillo, 238 F.3d at 355; Cason, 231 F.3d at 781-83. Next, the court should review the record and determine whether there are indeed ongoing constitutional violations.

The court should then consider each provision of the consent decree in light of the current and ongoing constitutional violations, if there are any, and determine which aspects of the decree remain necessary to correct those violations. For example, if the court finds a constitutional violation in the area of inmate protection, a section of the consent decree regarding staffing issues may be necessary if under staffing is contributing to the unconstitutional conditions. However, if the excessive use of force is the only constitutional violation found, then a provision regarding crowding issues may no longer be necessary.

Finally, if there are remaining aspects of the decree which are still necessary, the court should

16

determine whether those parts of the decree are narrowly drawn and the least intrusive means to correct the applicable violation. For example, with respect to a violation in the area of inmate protection, if a staffing provision remains necessary, it might not involve relief that is narrowly drawn and the least intrusive if it covers positions that are not commonly associated with the protection of inmates, such as security positions or certain administrative positions dealing with the reporting and investigation of complaints from inmates.

The procedure outlined above is mandated by § 3626(b)(3) and cannot be circumvented by a mere recitation of the key statutory language. Instead, the requisite findings must be evinced in writing with respect to each remaining aspect of prospective relief. See Cason, 231 F.3d at 785 (finding that § 3626(b)(3) requires "[p]articularized findings, analysis, and explanations [to] be made as to the application of each criteria to each requirement imposed by the consent decrees"). Otherwise, the district court should terminate the unnecessary relief, assuming that the other requirements for termination under § 3626 are met.

Here, the district court conducted an evidentiary hearing and allowed the parties to present evidence regarding the existing conditions in TDCJ-ID. Thus, the parties had an opportunity to present a current picture of TDCJ-ID. The court also made numerous detailed findings in a lengthy memorandum opinion regarding the present state of TDCJ-ID and the constitutionality of its conditions. However, the court failed to make the requisite findings under § 3626(b)(3). Instead of assessing the continued necessity of each provision of the 1992 judgment, the district court, in a conclusory fashion and tracking the pertinent statutory language, merely stated that the relief contained in that judgment meets the standards outlined in § 3626(b)(3).

The defendants argue that because the district court failed to make the requisite § 3626(b)(3)

17

findings, this Court should reverse its order refusing to terminate the 1992 judgment and render judgment terminating all existing prospective relief and the district court's jurisdiction. We disagree that an outright reversal, without a remand for further proceedings, is warranted. Recently, this Court was faced with a scenario similar to the one presented by this case. See Castillo, 238 F.3d at 339. In Castillo, the State of Texas appealed the district court's denial of its motion to terminate injunctive relief that it had entered in a case brought by a class of pre-trial detainees and convicted inmates in the Cameron County jail. Id. at 343. This Court found that although the prospective relief was terminable under § 3626(b)(1), there was insufficient evidence in the record to support the required findings under § 3626(b)(3). Id. at 353-55. Moreover, we found that "although the language in the [district court's order] track[ed] the requirements of § 3626(b)(3), it [did] not reach the needed level of particularized findings based on the conditions in the jail at the time termination was requested that is required by § 3626(b)(3)." Id. at 354. Thus, we concluded that "the best course of action" was to remand the case to the district court to hold an evidentiary hearing on the current constitutional condition of the jail and to the make the findings required under § 3626(b)(3). Id. at 355.

In a Sixth Circuit case that was factually analogous to the present case, the court remanded the case to the district court to make the requisite findings outlined in § 3626(b)(3). See Hadix v. Johnson, 228 F.3d 662 (6th Cir. 2000). In Hadix, the district court purported to conditionally terminate certain provisions of a consent decree in a prison litigation case with a 20-year history. Id. at 668. However, the conditions imposed actually required the continuation of prospective relief, and the Sixth Circuit construed the court's ruling as a refusal to terminate that relief. Id. The court then found that the district court had failed to make the requisite § 3626(b)(3) findings. Id. at 670. The

18

defendants argued that the Sixth Circuit should immediately terminate the consent decree rather than remand the case to the district court for more proceedings. Id. at 672. The Sixth Circuit rejected the defendants' arguments and found that since the district court had not made the requisite § 3626(b)(3) findings, a remand was warranted. Id. The court stated that "[w]hile the PLRA mandates swift resolution of motions to terminate consent decrees respecting prison conditions, and while the defendants are correct that there has been considerable delay in the district court, we must decline the defendants' request." Id. The court reversed the district court's order "insofar as it terminate[d] portions of the consent decree without giving the plaintiffs an opportunity to present evidence regarding current and ongoing constitutional violations, and insofar as it order[ed] the continuation of prospective relief without any finding that the relief [was] justified pursuant to the criteria set forth in § 3626(b)(3)." Id. at 672-73. See also, Cason, 231 F.3d at 783-86 (remanding prison litigation case and instructing the district court to hold an evidentiary hearing and make the particularized findings required by § 3626(b)(3) in assessing whether consent decrees should be terminated). A similar result is warranted here.

The constitutional findings made by the district court were based on the evidence in the record concerning the current state of TDCJ-ID and are sufficient to permit the court to analyze the continued necessity of each provision of the 1992 judgment. Thus, on remand, the court should make an assessment, in the manner described above, as to each provision of the 1992 judgment, in light of its findings of the unconstitutionality of various conditions in TDCJ-ID.

We recognize the need for an expeditious resolution to the termination motions brought by the defendants, particularly given the long duration of this case. Indeed, we have already noted, in an appeal regarding matters in the current proceedings, our dismay at the delay by the district court

19

in disposing of the present issues. Nevertheless, we are also mindful of the great amount of effort put into this case by the district court as well as the preeminent need for the court to continue to carefully and fairly consider the serious allegations by the inmates of unconstitutional conditions and treatment in the Texas prison system. Thus, to strike a balance between these two competing concerns, we are imposing a 90-day deadline, from the date of the entry of this judgment, for the district court to make the findings required under § 3626(b)(3) or to terminate the 1992 judgment. In our view, 90 days is a sufficient amount of time for the district court to make those findings, given that it has already considered the constitutionality of the current conditions in TDCJ-ID. It is within the district court's discretion to allow the parties some time within the 90-day period to attempt reach an agreement on a proposed form of judgment.

## CONCLUSION

We find that the termination provisions of the PLRA do not violate separation of powers principles or due process and are thus constitutional. Also, we find that the defendants are not equitably estopped from arguing that the 1992 judgment is unenforceable. We further find that the district court failed to make the requisite findings under § 3626(b)(3) in refusing to terminate prospective relief in this case. Accordingly, we REVERSE and REMAND this case for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

20

Reynaldo G. Garza, Specially Concurring:

I concur fully in the opinion by Judge Carl E. Stewart and I write separately to urge the district court below to end this case. I am very familiar with the same from its very beginning.

This case was transferred by our court from the Eastern District to the Southern District of Texas because its main prison was in Huntsville, which is in the Southern District of Texas, together with most of the other Texas prisons.

I was Chief Judge of the Southern District of Texas when this case was transferred to our court. I knew the case would keep a judge tied up for months, and I could not spare any of my judges to do so. Shortly thereafter, I swore in five new judges to the Southern District of Texas at one time, which shows that the ones that were there were carrying a very heavy load. I knew that my friend Judge W. Wayne Justice was familiar with the case and I talked to him about taking the case over. He said he would if Chief Judge Joe Fisher of the Eastern District of Texas gave his consent. I was able to get the consent of Chief Judge Fisher and I appointed Judge W. Wayne Justice to take over the trial of this case.

I remember the Attorney General's Office asked that I call a special en banc court of the Southern District of Texas, claiming that I did not have the authority to give the case to Judge Justice. By an order that I entered, I refused the request and told them that I did not need the Attorney General of Texas to tell me what my duties as Chief Judge of The Southern District of Texas were. Chief Judge John R. Brown had filed an order giving every district judge in Texas the right to sit in any other district in Texas. Judge W. Wayne Justice could sit, if assigned, in the Southern District of Texas. Our Southern District owes a big debt of gratitude to Judge W. Wayne Justice.

21

The fact that a consent decree was entered into shows that the conditions in the prisons of Texas needed to be addressed.

Judge Carl Stewart, in his opinion requires the district court to make the findings required under §3626(b)(3), or to terminate the 1992 judgment, and I write separately to urge Judge W. Wayne Justice to put an end to this case. I am sure that the conditions that existed when the consent decree was entered no longer exist, and I am sure many of those affected at the time are long gone from the penitentiary. If any of the present prisoners have need for some kind of help, they can file another law suit against the Texas Prison System, but this case has to be ended. I urge my good friend Judge W. Wayne Justice to do so if at all possible.