RIPPLE, Circuit Judge,
dissenting.
This is an important case both to the parties and to the development of the law in this circuit. Given the disposition reached by my colleagues, it is also imperative that the matter be returned quickly to the district court. That court issued a final order on May 15, 2015. Under its terms, the Transitional Administrator is scheduled to report to the parties on the status of the transition and on the compliance of the parties by August 17, and the reservation of jurisdiction to enforce the consent decree will terminate on September 16. The account of the Office of the Transitional Administrator is scheduled for closure on September 30, 2015. While I respectfully disagree with my colleagues’ resolution of the matter, the need to get this case back to the district court is an imperative that must be paramount. I therefore am, constrained to abbreviate my own writing in order to ensure that the district court and the parties are advised of this court’s decision immediately.
A.
In my view, this case does not implicate directly the content of the consent decree. As the district court noted explicitly, the order before us is a simple direction enforcing or implementing that consent decree and therefore is not governed by the provisions of the PLRA ex proprio vigore.[1] In the course of enforcing or implementing a consent decree, district courts must issue a variety of orders to address particular situations that inevitably arise. In the consent decree, the parties had recognized and agreed that the personnel situation in the Center had to undergo significant change in order to ensure that the previous treatment of the children came to a permanent end. The decree gives the Transitional Administrator the responsibility, set out in some detail in the decree, to achieve a cessation of the current situation through the implementation of personnel policy changes. The order appointing the Transitional Administrator, which the district court quite properly considered an integral part of the decree, specifically gives the Transitional Administrator the authority “to establish personnel policies; to create, abolish, or transfer positions; and to hire, terminate, promote, transfer, and evaluate management and staff of the JTDC.”[2]
In the course of his work under the consent decree, the Administrator determined that certain academic qualifications were necessary for those employees in direct and constant contact with the residents. The Union challenged his authority to make these changes. The district court had allowed the Union to intervene in the case for a specific and limited purpose, which included objecting to the Transitional Administrator’s plan.[3] After hearing *568 from the parties and the Union, the district court held that the Transitional Administrator’s solution was within his authority and not in violation of state law. The court pointedly noted that the court was not ordering the implementation of the Transitional Administrator’s plan but simply declaring that his action was within his authority under the consent decree.
The Supreme Court noted in Brown v. Plata, 563 U.S. 493, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011), that, once properly invoked, “the scope of a district court’s equitable powers ... is broad, for breadth and flexibility are inherent in equitable remedies.” Id. at 1944 (alteration in original) (internal quotation marks omitted). Our court has long recognized, moreover, a basic distinction between the terms of a consent decree and the periodic orders that interpret, enforce and implement its terms. See Jones-El v. Berge, 374 F.3d 541, 545 (7th Cir.2004). The distinction is, to put it mildly, not a novel one, and certainly one that we must assume that Congress understood in crafting the present provisions of the PLRA. In the PLRA, Congress mandated, as Supreme Court decisions already had done, that the terms of a federal court judgment be aimed at a “condition that offends the Constitution.”[4] The statute’s concern is with whether the court’s judgment or decree is aimed at a federal constitutional violation and whether the court has chosen a means tailored to rectify that violation once these parameters are set, as they were in this case. Here, the Union brought no challenge against the consent decree but merely challenged whether a certain action fell within its scope and was otherwise permissible under state and federal law.
No doubt, the PLRA does require that a court give substantial weight to public safety and adopt a remedial device that is “narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right,” see 18 U.S.C. § 3626(a)(1), but this statutory admonition, a codification of well-established principles of federal equitable jurisprudence in constitutional cases, must
not be interpreted to place undue restrictions on the authority of federal courts to fashion practical remedies when confronted with complex and intractable constitutional violations.... Courts should presume that Congress was sensitive to the real-world problems ... [that] would remedy constitutional violations in the prisons and that Congress did not leave prisoners without a remedy for violations of their constitutional rights.
Brown, 131 S.Ct. at 1937.
Here, the district court explicitly noted that the question before it was a limited one: whether the Transitional Administrator was authorized to take action under the consent decree and under state and federal *569 laws.[5] The court answered these questions in the affirmative. Indeed, it did not undertake to alter in any way the consent decree or to vest additional authority in the Transitional Administrator. It did not tell him that he had to implement his personnel plan; it simply told him that he was empowered to do it.
The district court in no way violated the PLRA in its handling of the Union’s limited objection. ■
B.
My colleagues conclude their opinion by stating that it should not be read to undermine the validity of the various settlement documents entered in this case. On this point, we are in agreement, and I write separately to emphasize that the court’s searching review of the district court record should not give the impression that we had undertaken to examine earlier decrees, not the subject of this appeal, for their separate compliance with the PLRA.[6] There are multiple reasons, including those mentioned by the majority, that these questions were not presented in the present appeal. First, the statute contains a specific way to challenge a non-conforming decree, 18 U.S.C. § 3626(b), but the *570 parties have never invoked that section and, to this day, see no reason to challenge the district court’s determination that the consent decree is in conformity with the statute. The Union, whose intervention was limited to the question of whether the Temporary Administrator’s personnel action was consistent with the consent decree, has given the question wide berth. Some of its filings in the district court raise the matter, at least obliquely, but it never asked the court to hold a hearing to consider squarely this question.[7]
Further, in any event, the district court explicitly said that, with respect to the consent decree, the requirements of the PLRA were met.[8] Portions of my colleagues’ opinion could be read as suggesting that the district court never made findings sufficiently detailed to satisfy the statute. However, the plain language of the statute does not require any particular degree of detail and, here, no party has ever disputed the objectives of the consent decree. Nor does any party contend that the terms of the consent decree are not designed precisely to deal with the problem. No doubt, if there is a dispute on whether a condition offends the Constitution or whether the means to address it are narrowly tailored, more specific findings would be required. See Cason v. Seckinger, 231 F.3d 777, 784 (11th Cir.2000). This situation often arises on a motion to terminate or modify a consent decree, a motion the Union never made. See 18 U.S.C. § 3626(b). Indeed, if termination is deemed proper and the decree is continued, the district court must make particularized findings. See 18 U.S.C. § 3626(b)(3); Ruiz v. United States, 243 F.3d 941, 950-51 (5th Cir.2001).
With great respect for the contrary view of my colleagues, I would affirm the judgment of the district court and allow this litigation to come to a peaceful and successful end.

. See R.589 at 17.

. R.330 at 7, § 6(c).

.The motion to intervene by the Union that ultimately was granted concerned a prior emergency motion by the Transitional Administrator to dispense with particular para *568 graphs in the bargaining agreement in order to hire an outside contractor to handle certain discrete tasks in the JTDC, which would require reassignment of current staff. The court approved the emergency motion over the Union’s objection, later amending it to the Union’s satisfaction. In its order granting the emergency motion, the court required a report by the Transitional Administrator “on the conditions and status of the issues raised” in the emergency motion. R.415 at 4. In the second of such reports, the Transitional Administrator included his proposed staffing plan. The court approved the report over the Union’s objection, resulting in the present appeal.

. Milliken v. Bradley, 418 U.S. 717, 738, 94 S.Ct. 3112, 41 L.Ed.2d 1069 (1974) (internal quotation marks omitted); Swann v. Charlotte-Mecklenburg Bd. of Educ., 402 U.S. 1, 16, 91 S.Ct. 1267, 28 L.Ed.2d 554 (1971).

. My colleagues find fault with the district court’s resolution of the question of the Union’s right to bargain as a matter of state law. The district court’s decision was based on its assessment of the limited arguments put before it. That is, it had determined that state law required application of a fact-specific balancing inquiry and stated that the Union had "fail[ed] to address in practical terms the anticipated benefits of bargaining.” R.589 at 11. The Transitional Administrator, on the other hand, "ha[d] gone through great efforts to explain the particular reasons for and policies underlying his decision ... and how these standards relate to his court-mandated mission.” Id. at 12. The court noted that "it is undisputed that approximately half of the JTDC's current residents are housed in units structured on the old JTDC 'system' — a system that was to be ‘restructured’ by court order.” Id. (citation omitted). Only then, after stating that the Union had not shown specific benefits of bargaining and that the countervailing interests were great, did it conclude that "the benefits of bargaining do not outweigh the burdens” and thus there was no state law right. Id. In my view, this conclusion is not about the need for speed and flexibility as an overriding justification, but about a failure of the Union to present the court with sufficient alternate considerations to be balanced.

. Whether a consent decree involving prisons always requires, as a prerequisite to the entry of a remedy, a judicial finding of an actual constitutional violation even when the parties do not request such a finding is a very difficult question, one that we ought to approach only in a case where resolution is absolutely necessary and where the matter has been briefed fully by the parties to the litigation. While a case can be made that the PLRA requires such a judicial finding, see Deborah Decker, Consent Decrees and the Prison Litigation Reform Act of 1995: Usurping Judicial Power or Quelling Judicial Micro-Management?, 1997 Wise. L.Rev. 1275, 1278; see also, e.g., Plyler v. Moore, 100 F.3d 365, 370 (4th Cir.1996) (deciding the question sub silentio in the context of a proceeding under 18 U.S.C. § 3626(b)(2)), the question becomes a great deal more difficult when we remember that such a requirement would, as a practical matter, make the whole idea of a consent decree superfluous. Consent decrees are sought by defendants, especially state and local defendants, to permit the implementation of a remedy without an admission or judicial finding of liability, an admission or finding with dire collateral consequences for state and municipal defendants. If, as the Supreme Court has admonished in Brown v. Plata, 563 U.S. 493, 131 S.Ct. 1910, 179 L.Ed.2d 969 (2011), we ought to be hesitant in interpreting the PLRA to attribute to Congress a motivation in the PLRA to leave prisoners without a remedy for violations of rights protected by the Constitution, we ought to be equally careful not to attribute to that body the motivation to make illusory the one mechanism by which both incarcerated individuals and local governments can resolve such litigation relatively expeditiously and inexpensively while maintaining a good deal of control in local hands.

. The district court was clear on this point:
Although the Union hints that the consent decrees ... may no longer be necessary to correct any underlying constitutional violations, the Union does not go so far as to request an evidentiary hearing on this question, nor does the Union actually ask the court to terminate these orders pursuant to 18 U.S.C. § 3626(b).
R.589 at 17 (citations omitted).

. See id.