**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 18-2457

REGINALD CORNELIUS LATSON,

Plaintiff – Appellant,

v.

HAROLD W. CLARKE, official and individual capacity; DARA ROBICHAUX, official and individual capacity; LARRY JARVIS, official and individual capacity; VIRGINIA DEPARTMENT OF CORRECTIONS,

Defendants – Appellees,

and

MARION CORRECTIONAL TREATMENT CENTER; COMMONWEALTH OF VIRGINIA; RAPPAHANNOCK REGIONAL JAIL; RAPPAHANNOCK REGIONAL JAIL AUTHORITY; JOSEPH HIGGS, JR., official and individual capacity; PHIL GRIMES, official and individual capacity; WILLIAM DIEHL, individual capacity; DOES 1-100,

Defendants.

------------------------------------------------------------

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF VIRGINIA; AMERICAN CIVIL LIBERTIES UNION OF MARYLAND, CENTER FOR PUBLIC REPRESENTATION; DISABILITY RIGHTS CALIFORNIA; DISABILITY RIGHTS MARYLAND, DISABILITY RIGHTS NORTH CAROLINA; MARTIN F. HORN; JUSTIN JONES; STEVE J. MARTIN; RICHARD MORGAN; DAN PACHOLKE; RODERICK AND SOLANGE MACARTHUR JUSTICE CENTER; PHIL STANLEY, DISABILITY LAW CENTER FOR VIRGINIA; UPTOWN PEOPLE'S LAW CENTER,

Amici Supporting Appellant.

---

Appeal from the United States District Court for the Western District of Virginia, at Abingdon. James P. Jones, District Judge. (1:16-cv-00039-JPJ-PMS)

---

Argued: November 13, 2019                    Decided: December 18, 2019

---

Before MOTZ, DIAZ, and HARRIS, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

**ARGUED:** John Bell Williams III, BUCKLEY LLP, Washington, D.C., for Appellant. Jeff W. Rosen, PENDER & COWARD, PC, Virginia Beach, Virginia, for Appellees. **ON BRIEF:** Caitlin Marie Kasmar, Andrew R. Louis, Elizabeth R. Bailey, BUCKLEY LLP, Washington, D.C.; Philip Fornaci, WASHINGTON LAWYERS' COMMITTEE FOR CIVIL RIGHTS AND URBAN AFFAIRS, Washington, D.C., for Appellant. Laura Maughan, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellees. Alan Mills, Liz Mazur, UPTOWN PEOPLE'S LAW CENTER, Chicago, Illinois; Vishal Agraharkar, Eden B. Heilman, ACLU OF VIRGINIA, Richmond, Virginia; Daniel M. Greenfield, Roderick & Solange MacArthur Justice Center, NORTHWESTERN PRITZKER SCHOOL OF LAW, Chicago, Illinois; Maggie E. Filler, RODERICK & SOLANGE MACARTHUR JUSTICE CENTER, Boston, Massachusetts, for Amici The American Civil Liberties Union Foundation of Virginia, Inc., American Civil Liberties Union of Maryland, Center for Public Representation, Disability Law Center of Virginia, Disability Rights California, Disability Rights Maryland, Disability Rights North Carolina, The Roderick and Solange MacArthur Justice Center, and The Uptown People's Law Center. Laura Rovner, Danielle C. Jefferis, Kira Case, Student Attorney, Student Law Office | Civil Rights Clinic, UNIVERSITY OF DENVER STURM COLLEGE OF LAW, Denver, Colorado, for Amici Former Corrections Experts.

---

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Reginald Latson, a prisoner with Autism Spectrum Disorder, Intellectual Disability, anxiety, and depression, sues members of the staff of Marion Correctional Treatment Center for alleged violations of his Eighth Amendment rights. The district court granted summary judgment to the staff, finding them entitled to qualified immunity. For the reasons set forth within, we affirm.

I.

The Virginia Department of Corrections incarcerated Reginald Latson at Marion Correctional Treatment Center ("MCTC") from June 5, 2014 to February 2, 2015. During that time, he spent 182 days in solitary confinement.[*] MCTC first placed Latson in solitary confinement to assess his risk level and, finding that he posed a security threat, kept him in solitary confinement for three and a half months. After his first twelve days in general population, Latson spit and cursed at a correctional officer and MCTC again placed him in solitary confinement, this time for two months. Latson then returned to general population. When the Virginia governor granted Latson a conditional pardon, MCTC placed him back in solitary confinement for four days, ostensibly for his protection. Thereafter, MCTC provided Latson his own wing of the prison where he could freely access a television,

---

[*] Although MCTC staff argue that Latson's confinement was more appropriately termed "Restrictive Housing" or "Special Housing," we use the more widely known phrase, solitary confinement.

3

phones, and other stimulation. Latson remained in this wing until his release, about a week and a half later.

While in solitary confinement, MCTC kept Latson alone in a cell between 22 and 24 hours each day, with limited access to recreation, phone calls, personal items, television, music, books, and magazines. Experts believe that incarceration in solitary confinement is counter-productive and increases aggressive responses for many prisoners, including those with Autism Spectrum Disorder and for Latson himself.

Upon his release, Latson sued members of MCTC staff pursuant to 42 U.S.C. § 1983, alleging violations of his Eighth Amendment rights. After discovery, the district court granted summary judgment to the MCTC staff, concluding that the staff members were entitled to qualified immunity because their conduct did not violate any law clearly established at the time of Latson's incarceration.

Latson noted this appeal. We review the district court's grant of summary judgment de novo. *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011) (en banc). A court can grant summary judgment only if, viewing the evidence in the light most favorable to the non-moving party, the case presents no genuine issues of material fact and the moving party demonstrates entitlement to judgment as a matter of law. *Id.*

## II.

Qualified immunity protects officials from lawsuits if their "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "To overcome this

4

shield, a plaintiff must demonstrate that: (1) the defendant violated the plaintiff's constitutional rights, and (2) the right in question was clearly established at the time of the alleged violation." *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018).

A right is clearly established if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal marks omitted); *see also Malley v. Briggs*, 475 U.S. 335, 341 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"). The right must be established in a "particularized" manner. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). If there is no controlling authority that specifically articulates the right, the right may still be clearly established if "a general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question." *United States v. Lanier*, 520 U.S. 259, 271 (1997).

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain," as measured by society's evolving standards of decency. *Whitley v. Albers*, 475 U.S. 312, 327 (1986). Prison officials violate the Eighth Amendment when they (1) seriously deprive a prisoner of a basic human need, and (2) exhibit deliberate indifference to prison conditions. *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993).

While Latson was in solitary confinement, MCTC gave him meals through a slot in his cell door and prohibited him from engaging in congregate religious, educational, or social programming. MCTC provided Latson limited access to recreation — sometimes no recreation at all, sometimes half an hour three days a week, and sometimes two hours five days a week, always in a barren, outdoor cell. MCTC also limited his access to

telephones, sometimes entirely preventing him from making personal calls, and at times prevented all access to television, personal music players, and non-religious books.

Every expert who evaluated Latson noted the deterioration he experienced as a result of this treatment. One expert stated that he "will never fully recover from these experiences and may never be able to be the independent young adult he hopes to be." The expert further explained that the drastic mental and emotional harms of solitary confinement are visited even more strongly upon Latson than upon neurotypical prisoners, given his Autism Spectrum Disorder, Intellectual Disability, anxiety, and depression.

Earlier this year, in *Porter v. Clarke*, we held that conditions similar to, and in some ways less draconian than, those imposed on Latson violated the Eighth Amendment. 923 F.3d 348, 361 (4th Cir. 2019). In *Porter*, the Virginia Department of Corrections placed death-row inmates in solitary confinement, fed them meals through a tray slot, permitted one hour of recreation five days a week, permitted telephone use any day of the week, and permitted them to keep a television and compact disc player in their cells. *Id.* at 353–54. We noted the overwhelming scientific evidence that these conditions of confinement "exact[] a heavy psychological toll that often continues to plague an inmate's mind even after he is resocialized." *Id.* at 357 (quoting *Incumaa v. Stirling*, 791 F.3d 517, 534 (4th Cir. 2015)) (internal quotation marks omitted). We concluded that keeping prisoners in a cell at least 23 hours a day, alone, with "no access to congregate religious, educational, or social programming" posed "a substantial risk of serious psychological and emotional harm." *Id.* Because of this substantial risk, and because this risk was "so obvious that it

6

had to have been known" by prison officials, we affirmed the district court's grant of summary judgment to the prisoners on their Eighth Amendment claim. *Id.* at 361, 364.

But this was not the state of the law at the time of Latson's incarceration. Although no longer good law, *see id.* at 358–59 (acknowledging changes in law and academic literature), at the time of Latson's incarceration (2014–2015) we had held that long-term solitary confinement did not violate the Eighth Amendment. *In re Long Term Admin. Segregation of Inmates Designated as Five Percenters*, 174 F.3d 464, 471–72 (4th Cir. 1999); *Sweet v. S.C. Dep't of Corr.*, 529 F.2d 854, 861 (4th Cir. 1975) (en banc); *Breeden v. Jackson*, 457 F.2d 578, 581 (4th Cir. 1972).

Latson argues that MCTC staff nevertheless had fair notice of the unconstitutional nature of solitary confinement as applied to prisoners with mental disabilities, given a handful of district court opinions from outside this Circuit. *See Coleman v. Brown*, 28 F. Supp. 3d 1068, 1096–99 (E.D. Cal. 2014); *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 915 (S.D. Tex. 1999), *rev'd and remanded on other grounds sub nom. Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001); *Madrid v. Gomez*, 889 F. Supp. 1146, 1264 (N.D. Cal. 1995). The argument fails. These decisions simply do not represent an "overwhelming consensus" of persuasive authority that clearly established and gave fair notice of an Eighth Amendment violation, particularly due to our contrary circuit authority at the time of the alleged violation. *See Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017). Accordingly, notwithstanding the dreadful conditions imposed on Latson, we can only conclude that MCTC staff are entitled to qualified immunity.

7

III.

Latson also alleges that Harold Clarke, director of the Virginia Department of Corrections, failed to rectify Latson's unconstitutional conditions of confinement at Rappahannock Regional Jail ("the Jail"). It is undisputed that Clarke had the authority to transfer Latson from the Jail to MCTC. Latson claims that Clarke knew of the unlawful conditions at the Jail and yet failed to timely transfer Latson, thereby violating the Eighth Amendment.

Latson's attorney spoke with Clarke about conditions in the Jail. However, the record reveals no evidence about *when* the conversation occurred. Thus, Latson has offered no evidence that Clarke delayed in transferring him after learning of the Jail's conditions. Without proof that Clarke failed to appropriately remedy the situation, Latson's claim must fail. *See Strickler*, 989 F.2d at 1379 (requiring a serious deprivation of a basic human need and deliberate indifference to prison conditions to state a cognizable Eighth Amendment claim). The district court did not err in granting summary judgment to Clark.

IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*