**CITY OF COVINGTON, et al., Appellants,**

v.

**KENTON COUNTY, Kentucky, Appellees.**

**No. 2002–SC–0991–DG.**

Supreme Court of Kentucky.

Nov. 18, 2004.

John E. Lange, III, Lange, Quill & Powers, P.S.C., Newport, Mark D. Guilfoyle, Patrick R. Hughes, Deters, Benzinger & LaVelle, P.S.C., Covington, Frank F. Chuppe, Virginia H. Snell, Angela C. McCorkle, Wyatt, Tarrant & Combs, LLP, Louisville, John Jay Fossett, Covington, Counsel for Appellants.

Sheryl G. Snyder, H. Lawson Walker, II, David S. Kaplan, Frost Brown Todd LLC, Louisville, Counsel for Appellee.

Opinion of the Court by Justice GRAVES.

In July 1978 and pursuant to KRS 68.197(1), Appellee, Kenton County, adopted Ordinance 78–6–1 which levied an occupational license fee of 0.4% on the first $25,000 of an individual's gross income ($100 maximum fee) and the first $37,500 of a business's net profits ($150 maximum fee). The resolution framed the ballot question as "whether a license fee shall be imposed at a percentage not to exceed one per cent," and purported that the fiscal court could in the future change the rates within statutory limits without submission to the voters.[1] The voters of Kenton

---

1. At that time, KRS 68.197(3) required that the fiscal court "shall submit the question of the license fee to the voters of the county at the next general election. If the license fee is rejected by a majority of those voting in the election, the license fee shall be repealed effective December 31 of the same year." A 1986 amendment deleted the requirement of a ratification election.

County thereafter authorized the fiscal court to impose an occupational tax at a rate up to 1% of income and profits.

In 2000, Kenton County adopted Ordinance 225.19, which amended Ordinance 78–6–1 and increased the county license fee from 0.4% to 0.7403%, and also tied the taxable income or net profits to the Social Security maximum as defined by the Federal Government for all taxpayers.[2]

Following the adoption of the 2000 ordinance, Appellants, the City of Covington and a number of its taxpayers, filed a declaratory judgment action in the Kenton Circuit Court seeking a determination of whether KRS 68.197(4) entitles taxpayers to credit their municipal license fees against Kenton County's occupational license fees. The trial court ruled that the county's tax increase pursuant to the 2000 ordinance constituted a license fee imposed under the provisions of KRS 68.197(1) after July 15, 1986, thus the city residents were entitled to credit their municipal fees against their county fees pursuant to KRS 68.197(4).

The Court of Appeals reversed, finding an apparent ambiguity in the word "imposed," in that the term could refer both to a county's initial adoption of an occupational license fee and to a county's adoption of additional or increased fees. To resolve the ambiguity, the court relied upon the history of KRS 68.197, in holding that the legislature did not intend the mandatory credit provision to apply to post–1986 increases in license fees that were originally adopted prior to 1986. The Court of Appeals concluded that Kenton County's license fee was "imposed" in 1978, and the 2000 ordinance did not "impose" a fee, but merely increased the rate of the existing fee. This Court thereafter granted discretionary review.

KRS 68.197, License fees in counties of 30,000 or more[3], was enacted pursuant to Section 181 of the Kentucky Constitution which authorizes the Legislature to delegate to cities and counties by statute the power to impose and collect license fees on trades, occupations and professions. *Preston v. Johnson County Fiscal Court*, Ky., 27 S.W.3d 790 (2000). At the time in question herein, namely when Kenton County adopted the 2000 ordinance, the statute provided, in pertinent part:

(1) The fiscal court of each county having a population of thirty thousand (30,000) or more may by order or resolution impose license fees on franchises, provide for licensing any business, trade, occupation, or profession, and the using, holding, or exhibiting of any animal, article, or other thing. License fees on such business, trade, occupation, or profession for revenue purposes, except those of the common schools, may be imposed at a percentage rate not to exceed one percent (1%) of:

(a) Salaries, wages, commissions, and other compensation earned by persons within the county for work done and services performed or rendered in the county;

(b) The net profits of self-employed individuals, partnerships, professional associations, or joint ventures resulting from trades, professions, occupations, businesses, or activities conducted in the county; and

(c) The net profits of corporations resulting from trades, professions, occupations, businesses, or activities conducted in the county.

2. The Social Security maximum is determined pursuant to 42 U.S.C. § 403.

3. At the time of its enactment in 1966, the title read, "License fees in counties of 50,000 or more."

In order to reduce administrative costs and minimize paperwork for employers, employees, and businesses, the fiscal court may provide:

1. For an annual fixed amount license fee which a person may elect to pay in lieu of reporting and paying the percentage rate as provided in this subsection on salaries, wages, commissions, and other compensation earned within the county for work done and services performed or rendered in the county; and

2. For an annual fixed amount license fee which an individual, partnership, professional association, joint venture, or corporation may elect to pay in lieu of reporting and paying the percentage rate as provided in this subsection on net profits of businesses, trades, professions, or occupations from activities conducted in the county.

Licenses imposed for regulatory purposes are not subject to such limitations as to form and amount. No public service company that pays an ad valorem tax is required to pay a license tax, and no license tax shall be imposed upon or collected from any insurance company except as provided in KRS 91A.080, bank, trust company, combined bank and trust company, combined trust, banking, and title business in this state, or any savings and loan association whether state or federally chartered, or in other cases where the county is prohibited by law from imposing a license tax.

(2) No such license fee shall be imposed or collected on income received by members of the Kentucky National Guard for active duty training, unit training assemblies, and annual field training.

(3) Persons who pay a county license fee pursuant to this section and who also pay a license fee to a city contained in the county may, upon agreement between the county and the city, credit their city license fee against their county license fee.

(4) The provisions of subsection (3) of this section notwithstanding, effective with license fees imposed under the provisions of subsection (1) of this section on or after July 15, 1986, persons who pay a county license fee and a license fee to a city contained in the county shall be allowed to credit their city license fee against their county license fee.

Prior to a 1986 amendment which added a new subsection (4), taxpayers paying a municipal fee could only obtain a credit against the county fee provided that the city and county had reached an agreement regarding the credit. *See* KRS 68.197(3). Notably, the statute has undergone additional significant changes through amendments in both 2002 and 2003.

In reaching its conclusion in this case, the Court of Appeals assumed a number of questionable premises. With regard to the pre–1986 requirement of voter ratification of a county license fee, the court noted that the statute "clearly required voter approval for the initial adoption of an occupational license fee, but not for any subsequent modification of the tax rates." With regard to the 1986 enactment to subsection (4), the court opined that "the primary intent of the amendment was to preserve the authority of counties which had adopted occupational license fees prior to July 15, 1986," and that "the continuing power to modify the tax rates flows necessarily from the grant of authority to impose license fees for the first time." From all of this, the Court of Appeals held:

Consequently, the word 'impose' as used in both KRS 67.197[sic] (1) and (4) re-

fers to the fiscal court's initial adoption of an occupational license fee. We conclude, therefore, that the General Assembly intended to exempt counties which had already adopted occupational license fees as of July 15, 1986 from the mandatory offset provisions of KRS 68.197(4).

The City of Covington contends that Kenton County's year–2000 ordinance, which substantially increased the percentage rate of the license fee as well as increased the income base and net profits subject to the fee, plainly "imposed" a license fee under the provisions of KRS 68.197(1), making the credit for municipal fee-payers mandatory under subsection (4). The city points out that even though the voters in 1978 authorized a fee "up to 1%," the fee actually imposed at that time was only 0.4%. Furthermore, the city argues that any ambiguity in the term "impose" in subsection (4) must be resolved in favor of the taxpayer.

Kenton County defends that the General Assembly failed to articulate that the definition of "imposed" encompasses the term "increased." As such, the county maintains that to construe a tax increase as an imposition of a tax adds language to a statute that makes no mention of such. We disagree.

■ In 1986, the General Assembly amended KRS 68.197 to give taxpayers the automatic right to credit their city occupational license fees against "license fees imposed under the provisions of subsection 1 of this section on or after July 15, 1986." KRS 68.197(4). The mandatory tax credit is triggered when a county imposes a license fee on or after the specified date. We are of the opinion that a tax is "imposed" whenever the fiscal court enacts an ordinance requiring taxpayers to pay the tax, regardless of whether it is a new tax or an increase of an existing tax. Thus,

for the legislature to include the word "increase" in the statute would be an unnecessary redundancy.

■ The 2000 Ordinance, which increased Kenton County's occupational license fee from .4% to .74% and raised the taxable income and net profits base to the Social Security maximum, clearly "imposed" a fee "on or after July 15, 1986" because the increased rate and income base resulted in additional monies being subject to the fee. Taxpayers were only required to pay these additional monies after Kenton County enacted the ordinance.

■ The language of KRS 68.197 unambiguously mandates a tax credit against any county fees imposed after 1986 without qualification. As such, we reject the Court of Appeals' conclusion that "imposed" refers only to the initial adoption of an occupational license fee. In doing so, we apply the plain meaning rule. The words of the statute are to be given their plain meaning unless to do so would constitute an absurd result. *See e.g., Executive Branch Ethics Commission v. Stephens*, Ky., 92 S.W.3d 69, 73 (2002). To qualify the word "imposed" with the word "initially" would add language to the statute, since KRS 68.197(4) makes no explicit reference to the initial imposition of a fee. "Our duty is to ascertain and give effect to the intent of the General Assembly. We are not at liberty to add or subtract from the legislative enactment nor discover meaning not reasonably ascertainable from the language used." *Beckham v. Board of Educ. Of Jefferson County*, Ky., 873 S.W.2d 575, 577 (1994). Had the General Assembly intended to exempt the so-called "grandfathered" counties from not only mandatory tax credits for fees imposed prior to July 1986, but also those subse-

quently imposed, it surely could and would have said so in definitive words.

Kenton County exercised its authority under KRS 68.197(1) in 1978 when, by Ordinance No. 78–6–1, it levied an occupational license fee at a rate of .4% to generate revenue. At that time, KRS 68.197 required voter ratification of the fee. A majority of Kenton County citizens who voted in 1978 ratified an occupational license fee up to 1%. However, that ratification did not impose a 1% license fee. Rather, the choice Kenton County voters faced in 1978 was simply whether or not their county government should be authorized to impose an occupational fee up to 1% in the future.

The fiscal court's 1978 ordinance only imposed a license fee at the rate of .4% on the first $25,000 of a person's income and the first $37,500 of a business's profits.

██ Because the plain meaning of the KRS 68.197 is unambiguous and does not lead to an absurd result, we do not need to seek recourse in legislative history. *Commonwealth of Kentucky v. Plowman*, Ky., 86 S.W.3d 47, 49 (2002)("An unambiguous statute is to be applied without resort to any outside aids.") We hold that KRS 68.197(4) entitles the municipal taxpayers in the City of Covington to credit their municipal occupational license fees against the year 2000 increases in Kenton County's occupational license fees. However, this tax credit does not apply to the 0.4% annual license fee that was imposed in 1978, but only to the amount in which the tax was increased in the year 2000.

Accordingly, we reverse the Court of Appeals and reinstate the judgment of the Kenton Circuit Court.

All concur.