**Mark KING, Appellant,**

v.

**CAMPBELL COUNTY, Kentucky, Appellee.**

No. 2005–CA–001841–MR.

Court of Appeals of Kentucky.

Nov. 3, 2006.

Discretionary Review Denied by Supreme Court April 11, 2007.

---

Robert R. Sparks, Parry Deering Futscher & Sparks, Covington, KY, for appellant.

Jeffrey C. Mando, Joy A. Moore, Adams, Stepner, Woltermann & Dusing P.L.L.C., Covington, Justin D. Verst, Campbell County Attorney, Newport, for appellee.

Before ABRAMSON and VANMETER, Judges; KNOPF,[1] Senior Judge.

## OPINION

ABRAMSON, Judge.

Kentucky Revised Statute (KRS) 68.197 authorizes the fiscal court of each county having a population of 30,000 or more to impose an occupational license fee upon individual incomes and business net prof-

---

1. Senior Judge William L. Knopf sitting as Special Judge by assignment of the Chief Jus-tice pursuant to Section 110(5)(b) of the Kentucky Constitution and KRS 21.580.

its. In a March 2005 amendment to this statute, the General Assembly eliminated a credit which county taxpayers were allowed for city occupational license fees they had paid for the same period. The amendment applies to "those counties where a license fee has been authorized by a public question approved by the voters." Apparently only two counties, Campbell and Kenton, meet this description. The General Assembly also provided that the amendment would apply retroactively, thus eliminating not only any future credits, but also any unclaimed credits that may have been due in the past. Mark King, a Campbell County taxpayer, on his own behalf and purportedly on behalf of other Campbell County taxpayers, alleges that the amendment's application to only two counties runs afoul of the constitutional proscription against special legislation and that its retroactive application violates both the constitutional guarantee of due process and the constitutional mandate regarding the separation of powers. King also maintains that Campbell County did not validly enact its original license fee ordinance. Agreeing with the trial court that the March 2005 amendment to KRS 68.197 is not unconstitutional and that the Campbell County fee ordinance is valid, we affirm the dismissal of King's complaint.

■ Campbell County first enacted its occupational license fee ordinance in 1978. At that time, KRS 68.197 required that license fee ordinances be authorized in a public question approved by the voters. The statute also permitted, but did not require, a credit against county license fees for city license fees paid for the same period. One of the principal projects to be funded by the Campbell County fee was the Transit Authority of Northern Kentucky (TANK). Accordingly, the fiscal court adopted Ordinance 1–78, which imposed a 0.4% license fee to be incorporated in the general revenue fund of the county and to be used as follows:

(a) ... in defraying the current, general and incidental expenses of the county;

(b) To appropriate and pay over to the Transit authority of Northern Kentucky capital and operating funds as provided in K.R.S. Chapter 96A.

(c) For traffic improvement and mass transportation related projects as authorized by the Fiscal Court. Campbell County Ordinance 1–78 § 11 (July 1978).

The public question put to Campbell County voters in November 1978 asked,

Are you in favor of continuing bus service in Campbell County through a continuation of the general fund license fee which took effect July 1, 1978, whereby salaries, wages, commissions, net profits and other compensation earned within the county will be subject to a rate set annually by the fiscal court not to exceed one (1%) percent as authorized by Kentucky Revised Statutes, Section 68.197?

King contends that this ballot question failed to apprise voters that the license fee could be used for purposes other than "bus service" and that the ordinance is thus invalid at least to the extent that it purports to authorize other uses. The trial court ruled that the ballot adequately raised the question of a "general fund license fee" and that the ordinance was valid. We agree.

■ King is correct that public questions presented to voters by ballot must accurately and fully represent the matters being considered. *Chandler v. City of Winchester*, 973 S.W.2d 78 (Ky.App.1998). *Cf.* KRS 83A.120 (requiring for municipal public-question elections that "[t]he resolution or petition shall set out in full the matter to be considered."). But we agree with the trial court that the Campbell County ballot question met this require-

ment. The question clearly identified the fee as a "general fund license fee," accurately presented bus service as one of the expenses to which the fee was to be dedicated, and did not suggest that bus service was the exclusive purpose for the fee.

We note, furthermore, that election challenges based on the wording of a public question constitute election contests governed by KRS 120.250, which requires that such contests be brought within thirty days after the election. *Forrester v. Terry,* 357 S.W.2d 308 (Ky.1962) (applying prior law); *Chandler v. City of Winchester, supra* (applying KRS 120.280's fifteen day limitation period for election contests challenging constitutional amendments). King's challenge to the ballot question must also be dismissed, therefore, because it is untimely.

We turn next to King's contentions regarding the constitutionality of the March 2005 amendment. At about the time that Campbell County adopted Ordinance 1–78, Kenton County adopted a similar ordinance authorizing its occupational license fee. These two counties, apparently, were the only ones to adopt license fees under the public-question procedure. In 1986, the General Assembly amended KRS 68.197 and eliminated the public-question requirement. Henceforth, fiscal courts were authorized to impose occupational license fees without voter ratification. At the same time, however, the General Assembly required, rather than permitted, that county fees "imposed" after July 1986 be subject to a credit for city license fees. According to King, since the 1986 amendment eliminating the voter ratification requirement and mandating the city fee credit, more than thirty counties have adopted occupational license fees pursuant to KRS 68.197.

After July 1986, both Kenton and Campbell Counties increased the rate of their fees. Campbell County increased its rate to 0.8% and then 0.9% in September 1986 and December 1999, respectively. Kenton County upped its rate in 2001 to 0.7403%. Both counties took the position that these rate increases merely modified their pre-July 1986 fees and that because they did not "impose" new fees after that date the increases were not subject to the city fee credit. Kenton County taxpayers challenged that interpretation in a lawsuit filed soon after the Kenton County rate increase went into effect in January 2001. The case, styled *City of Covington v. Kenton County,* eventually made its way to our Supreme Court. In November 2004, that Court reversed a decision by this Court upholding Kenton County's interpretation of the statute and held that the post-July 1986 Kenton County rate increase amounted to the imposition of a new fee and thus the Kenton County license fee was, to the extent of the increase, subject to the mandatory city fee credit. *City of Covington v. Kenton County,* 149 S.W.3d 358 (Ky. 2004).

The Supreme Court's decision prompted both this Campbell County suit, which was filed March 9, 2005, and the aforementioned March 16, 2005 amendment to KRS 68.197 by the General Assembly. This suit seeks a refund of all Campbell County license fees, back to 1986, that, according to the Supreme Court, were subject to the city fee credit. The amendment, also known as House Bill 400, included the following declaration of the General Assembly's intent:

> It is necessary to clarify the General Assembly's original intention that it is not the intent of the General Assembly to bring financial hardship upon a county from the crediting or refunding of fees when the county has acted in good faith to provide for the needs of its community by the imposition of a license

fee authorized by this section.... Whereas, recent judicial interpretations of KRS 68.197 could result in catastrophic financial hardship for some Kentucky counties, an emergency is declared to exist, and this Act takes effect upon its passage and approval by the Governor or upon its otherwise becoming a law.

Campbell County moved to dismiss King's complaint based on the following provisions of House Bill 400, which are clearly intended to foreclose the relief King seeks:

(10) (a) In those counties where a license fee has been authorized by a public question approved by the voters, there shall be no credit of a city license fee against a county license fee except by agreement between the county and the city in accordance with subsection (6) of this section;

(b) Notwithstanding any provision of the KRS to the contrary, no taxpayer shall be refunded or credited for any overpayment of a license tax paid to any county to the extent the overpayment is attributable to or derives from KRS 68.197 as it existed at any time subsequent to July 15, 1986, and the taxpayer seeks a credit for a license tax paid to a city located with such county, if such refund claim or amended tax return claim was filed or perfected after November 18, 2004, except by agreement between the city and county in accordance with subsection (6) of this section;

. . .

(d) This subsection shall have retroactive application.

In response, King argued that to the extent the amendment singles out "those counties where a license fee has been authorized by a public question" it amounts to special legislation in violation of Section 59 of the Constitution of Kentucky. He further maintained that to the extent that it purports to apply retroactively to refund claims, such as his own, filed after November 18, 2004 (the date of the Supreme Court's decision), but before the effective date of the amendment, it violates the Constitution's due process and separation of powers provisions. In an August 29, 2005 order, the trial court rejected these arguments, upheld the constitutionality of the amendment, and dismissed King's complaint. On appeal, King reiterates the constitutional arguments he raised below.

 Civil Rule (CR) 12.02 permits the trial court to dismiss a suit that "fail[s] to state a claim upon which relief can be granted." Dismissal under this rule is not proper "unless it appears the pleading party would not be entitled to relief under any set of facts which could be proved in support of his claim." *Pari–Mutuel Clerks' Union of Kentucky v. Kentucky Jockey Club*, 551 S.W.2d 801, 803 (Ky.1977). Because this declaratory judgment action involves no factual dispute, the parties agree that judgment under CR 12 was appropriate. As always, we review the trial court's purely legal conclusions *de novo*. *Wheeler & Clevenger Oil Company, Inc. v. Washburn*, 127 S.W.3d 609 (Ky.2004); *James v. Wilson*, 95 S.W.3d 875 (Ky.App.2002).

Section 59 of our Constitution prohibits "local or special acts" for the purpose of "regulat[ing] the limitation of civil or criminal causes, [or] ... legaliz[ing] ... the unauthorized or invalid act of any ... county." King maintains that House Bill 400 violates these provisions by shortening the limitations period for license fee refund claims and by authorizing the retention of county license fees otherwise subject to the city fee credit in only two counties, those "where a license fee has been authorized by a public question approved by the voters."

The Constitution forbids special legislation because it can easily serve as a means to oppress some and to favor others. As our Supreme Court has noted,

> [f]rom the Debates of the Constitutional Convention of 1890, it is clear that the overriding purpose of Section 59 and its twenty-nine subsections was to protect the citizens of Kentucky from special interest groups, foremost among them being the railroads and corporations which had previously obtained special privileges with respect to taxation and other matters.

*Commonwealth of Kentucky Revenue Cabinet v. Cope,* 875 S.W.2d 87, 88 (Ky.1994). To prevent such abuses, Section 59 requires that our laws be general, *i.e.,* that they pertain to everyone or everything similarly situated in a fair and basically even-handed way.

 In requiring that legislation be general, however, the Constitution does not forbid the General Assembly from making classifications or from legislating with respect to special subjects. "A law is not local or special merely because it does not relate to the whole state or to the general public. If facts reasonably differentiate a class or locality from the general public or the state at large, a legislative act ... may relate to that class or to that locality without running afoul of § 59." *Commonwealth v. Moyers,* 272 S.W.2d 670, 673 (Ky.1954). "The fact that the General Assembly deals with a special subject does not *per se* make it[s enactments] special legislation.... Classification based upon reasonable and natural distinctions that relate logically to the purpose of the Act do not violate Section 59." *Waggoner v. Waggoner,* 846 S.W.2d 704, 706–07 (Ky. 1992). The constitutional test is whether there are "distinctive and natural" reasons supporting the legislative classification, and whether "the statute applie[s] equally

to all in [the] class." *Commonwealth of Kentucky Revenue Cabinet v. Cope,* 875 S.W.2d at 89 (citing *Schoo v. Rose,* 270 S.W.2d 940 (Ky.1954)).

 The question here, then, is whether there are distinctive and natural reasons setting those counties whose license fees were authorized by a public question apart from the other counties that have adopted occupational license fees pursuant to KRS 68.197 such that a legitimate legislative purpose is served by requiring the latter counties to credit license fees but relieving the former from that requirement. We agree with the trial court that House Bill 400's classification of "those counties where a license fee has been authorized by a public question approved by the voters," a classification limited to Campbell and Kenton Counties, passes constitutional muster. Unlike the counties that implemented occupational license fees after July 1986, when it was clear that city license credits were mandatory fees, Campbell and Kenton Counties could reasonably believe that their implementation of license fees under the original public question procedure excluded them from the credit requirement, and thus they could, and did, unlike all other counties, rely to their detriment on license fee revenues undiminished by city fee credits. As the General Assembly declared, that good-faith reliance not only comported with the General Assembly's original intention, but has now, in the wake of the Supreme Court's *City of Covington* decision, subjected these two counties (Campbell County in particular) to unique and potentially disruptive refund claims. Far from suggesting legislative oppression or favoritism, these facts "distinctly and naturally" make a class of Campbell and Kenton Counties and justify legislation reasonably calculated to relieve the class from the threatened fiscal hardship. Accordingly,

we agree with the trial court that to the extent that House Bill 400 applies only to "those counties where a license fee has been authorized by a public question approved by the voters," it does not violate Section 59 of our Constitution.

King next contends that to the extent that House Bill 400 applies retroactively it violates the constitutional guarantee of due process. The general rule, of course, is that legislation applies only prospectively, but KRS 446.080 authorizes the General Assembly to legislate retroactively provided it declares its intention to do so expressly, as it did in this case. Otherwise, retroactive legislation is subject to certain constitutional limitations, which the United States Supreme Court has described as "modest." *Landgraf v. USI Film Products*, 511 U.S. 244, 272, 114 S.Ct. 1483, 1501, 128 L.Ed.2d 229 (1994). One of these limitations, as King notes, derives from the due process provisions of the state and federal Constitutions, which prohibit the retroactive impairment of "vested" rights. *Darlington v. Board of Councilmen of City of Frankfort*, 282 Ky. 778, 140 S.W.2d 392 (1940). A right is vested, for these purposes, only if it has ripened into a secure entitlement to present or future enjoyment. The mere expectation of enjoyment is not enough. *Romero v. Administrative Office of the Courts*, 157 S.W.3d 638 (Ky.2005); *Louisville Shopping Center, Inc. v. City of St. Matthews*, 635 S.W.2d 307 (Ky.1982). King maintains that his entitlement to a refund of Campbell County license fees vested when the Supreme Court's opinion in *City of Covington* became final and required Campbell County to give license fee taxpayers credit for their city fees. House Bill 400's retroactive elimination of the credit and its disallowance of post-November 18, 2004 refund claims, King insists, amount to an invalid retroactive impair-

ment of his vested right to a refund. We disagree.

As the trial court observed, the United States Supreme Court's opinion in *United States v. Carlton*, 512 U.S. 26, 114 S.Ct. 2018, 129 L.Ed.2d 22 (1994), undermines King's argument. In *Carlton*, the Supreme Court rejected a similar due process challenge to a law that retroactively eliminated an estate tax deduction. The Court noted that

[t]axation is neither a penalty imposed on the taxpayer nor a liability which he assumes by contract. It is but a way of apportioning the cost of government among those who in some measure are privileged to enjoy its benefits and must bear its burdens. Since no citizen enjoys immunity from that burden, its retroactive imposition does not necessarily infringe due process.

*United States v. Carlton*, 512 U.S. at 33, 114 S.Ct. at 2023 (citation and internal quotation marks omitted). The *Carlton* Court held retroactive tax legislation satisfies the Due Process Clause provided that it "is supported by a legitimate legislative purpose furthered by rational means." *Id.* at 30–31, 2022. This is so, the Court explained, because "[t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." *Id.* at 33, 2023. In that case, the tax deduction at issue had proved far more costly than anticipated, and the Court held that preserving the treasury from the unexpected revenue loss was a legitimate congressional purpose. The Court also noted that Congress had "acted promptly" and had "established only a modest period of retroactivity," one that did not upset longstanding and settled taxpayer expectations. *Id.* at 32, 2023.

Here, likewise, our Supreme Court's *City of Covington* decision did not give King a vested right in the statutory city

fee credit. It only gave him the expectation of such a credit, contingent on the existing statute. The General Assembly's prompt retroactive amendment of the statute so as to eliminate the credit, like the retroactive elimination of the unexpectedly costly tax deduction in *United States v. Carlton, supra,* was a rational means of furthering a legitimate legislative purpose: the prevention of a potentially severe disruption of county finances.

King notes that in *Carlton* the period of retroactivity was only about a year, and that Justice O'Conner, in a concurring opinion, expressed a concern that retroactivity periods much longer than a year would raise "serious constitutional questions." King maintains that the retroactivity period here exceeds the due process limits the *Carlton* Court implied. We disagree.

The situation the United States Supreme Court addressed in *Carlton* was significantly different from the situation in this case. In *Carlton,* Congress had retroactively limited an estate tax deduction upon which an estate's administrator had legitimately relied in structuring certain stock transactions. The amendment in effect withdrew the tax benefit and cost the estate more than two million dollars in deductions and several hundred thousand dollars in transaction costs. Nevertheless, the Court held that the administrator's reasonable reliance did not foreclose Congress's ability to make a prompt retroactive adjustment to the law. It was in this context that Justice O'Conner commented that "the Court has never intimated that Congress possesses unlimited power to readjust rights and burdens . . . and upset otherwise settled expectations. The governmental interest in revising the tax laws must at some point give way to the taxpayer's interest in finality and repose." *United States v. Carlton,* 512 U.S. at 37–38, 114

S. Ct at 2025 (citation and internal quotation marks omitted).

Unlike the amendment in *Carlton,* however, which withdrew an unambiguous deduction and deliberately undermined reasonable taxpayer reliance, House Bill 400 does not withdraw a provision upon which taxpayers have relied, but seeks to clarify the license fee credit provision in the wake of our Supreme Court's *City of Covington* decision. The Campbell County taxpayers could have sought refunds in 1986, when Campbell County first raised its license fee rates following the 1986 amendment to KRS 68.197. For all these years, however, the taxpayers acquiesced in the County's interpretation of that statute, an interpretation that this Court found reasonable, but the Supreme Court rejected. If there are "settled expectations" in this case, they are the County's, not the taxpayers. The taxpayers' expectations arose only with the Supreme Court's *City of Covington* decision in November 2004, and within a few short months, in March 2005, long before those expectations could be deemed "settled" or "vested," the General Assembly had acted to revise the law and to shield Campbell and Kenton Counties from what it believed could be the devastating consequences of the Supreme Court's decision. In these circumstances—where the General Assembly has not attempted to withdraw legislation upon which taxpayers have relied in structuring their affairs, but has promptly sought to foreclose refunds as the result of an unanticipated judicial interpretation of a constitutionally valid tax provision—the retroactive provisions of House Bill 400 do not run afoul of the timeliness concerns expressed by the United States Supreme Court in *Carlton.*

 Finally, King contends that the retroactive application of House Bill 400 amounts to a legislative encroachment upon the judicial power in violation of our

Constitution's insistence on the separation of those powers. Ky. Const. §§ 27 and 28. According to King, "[b]y enacting H.B. 400, the General Assembly has made an incursion into the judicial power of the courts by attempting to effect a loss of vested rights of Appellant and others similarly situated." The United States Supreme Court has held that the federal separation-of-powers requirement prohibits Congress from "retroactively commanding the federal courts to reopen final judgments," *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. 211, 219, 115 S.Ct. 1447, 1453, 131 L.Ed.2d 328 (1995), and from "adjudicating particular cases legislatively." *Ruiz v. United States,* 243 F.3d 941, 948 (5th Cir. 2001) (citing *United States v. Klein,* 80 U.S. (13 Wall.) 128, 147, 20 L.Ed. 519 (1871)). It does not, however, prevent Congress from affecting pending cases by retroactively "amend[ing] applicable law." *Plaut v. Spendthrift Farm, Inc.,* 514 U.S. at 218, 115 S.Ct. at 1452 (internal quotation marks omitted; citing *Robertson v. Seattle Audubon Soc.,* 503 U.S. 429, 112 S.Ct. 1407, 118 L.Ed.2d 73 (1992)). King has suggested no reason to construe Kentucky's separation-of-powers provisions differently. King's right to a tax refund had not vested through a final judgment and thus the General Assembly's retroactive amendment of a law applicable to his pending case did not encroach upon judicial power in violation of the Constitution's separation-of-powers provision.

In sum, when Campbell County first imposed its occupational license fee in 1978 it was not required to give county license fee taxpayers credit for city fees which they had paid. With House Bill 400, the General Assembly acknowledged Campbell County's reasonable reliance on that exemption through the years and restored the exemption to the extent that our Supreme Court's *City of Covington* decision had limited it. Given the county's history

with respect to its license fee and the city fee exemption, the retroactive restoration did not violate the constitutional proscription against special legislation, nor did it violate the constitutional requirements of due process and the separation of powers. Consequently, the Campbell Circuit Court did not err by dismissing King's complaint, and we affirm its August 29, 2005 order.

ALL CONCUR.