# IN THE COURT OF APPEALS OF IOWA

No. 15-1213
Filed September 28, 2016

**AINLEY KENNELS & FABRICATION, INC., ET AL.,**
    Plaintiffs-Appellants,

**vs.**

**CITY OF DUBUQUE, IOWA,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Dubuque County, Monica L. Ackley, Judge.

A group of taxpayers appeals the district court's grant of summary judgment. **REVERSED AND REMANDED.**

Sean P. Moore of Brown, Winick, Graves, Gross, Baskerville & Schoenebaum, P.L.C., Des Moines, for appellants.

Ivan T. Webber and James R. Wainwright of Ahlers & Cooney, P.C., Des Moines, for appellee.

Heard by Vogel, P.J., and Vaitheswaran and McDonald, JJ.

**VOGEL, Presiding Judge.**

Ainley Kennels & Fabrication, Inc., et al.[1] (Ainley) appeals the district court's denial of its motion for summary judgment and the grant of the City of Dubuque's (the City) motion for summary judgment. Ainley claims the district court erred in determining an ordinance adopted by the City qualified as a corrective ordinance or curative act and thereby implicitly finding the City did not violate Ainley's substantive due process rights. We conclude the City's ordinance was a retroactive tax, rather than a curative act, and the ordinance violated Ainley's substantive due process rights. Therefore, we reverse the order of the district court and remand for further proceedings.

     I.      Background Facts and Proceedings

In 1993, Dubuque County held two special elections regarding franchise agreements with utility companies. On August 24, 1993, the voters approved a franchise agreement with Peoples Natural Gas Company for gas services. On December 7, 1993, the voters approved a franchise agreement with Interstate Power Company for electric services. At some point, the City annexed areas that received their electric services from Maquoketa Valley Rural Electrical Cooperative. Thereafter, the City entered into a franchise agreement with Maquoketa Valley Rural Electrical Cooperative, which included a franchise fee.

---

[1] The plaintiffs-appellants, referred to collectively as Ainley, are: Ainley Kennels & Fabrication, Inc.; Automotive Enterprises Company d/b/a Automotive Industrial; Dubuque Stamping & Manufacturing, Inc.; Eagle Window & Door Manufacturing, Inc.; Rite-Hite Corp. d/b/a Frommelt Safety Products; Grove Tools, Inc.; Klauer Manufacturing Co.; Morrison Bros. Co.; Rousselot Dubuque, Inc.; Smart Retract, Inc.; F.H. Uelner Precision Tools & Dies, Inc.; Union-Hoermann Press, Inc.; Welu, Inc. d/b/a Welu Printing Co.; Giese Manufacturing Company, Inc.; Tri-State Industries, Inc.; and Woodward Communications, Inc. d/b/a Telegraph Herald. According to the City, the refund claims from all of these companies total an estimated $283,004.16.

On July 28, 2003, the City adopted ordinances 58-03 and 59-03, which established a two percent franchise fee for both Interstate Power and Peoples Natural Gas. Both ordinances contained a section that reads:

> The fee imposed by Sec. 1 shall not apply to any sale . . . that is exempt under Iowa Code § 422.45 from the tax imposed by Iowa Code § 422.43 and in computing the amount of the fee, the Company shall not include such sales, unless it is impracticable to do so, in which event the City Manager may provide for a rebate of the amount of the fee for such exempt sales . . . to the Company's customers.

On September 15, 2003, the City passed ordinances 75-03 and 76-03, which amended ordinances 58-03 and 59-03 (collectively the 2003 ordinances). The amended ordinances clarified some of the procedures for paying the franchise fees, established exempt persons, and provided the processing of rebates for exempt persons. The utility companies determined they would need to charge the franchise fee to all customers, including exempt customers, and then the City would provide a refund process for exempt customers.

The City does not dispute that Ainley was exempt from the franchise fee under the City's ordinances. Nevertheless, after the ordinances were passed, Ainley paid the franchise fee as part of its regular utility bills. Prior to 2013, Ainley was unaware that it was exempt from the franchise fee and eligible for a refund for the franchise fees paid in preceding years. When Ainley learned this, it contacted the City's finance director to inquire about the proper procedure for applying for a refund and applied. Initially, the City told Ainley it would receive refunds for the previous three years. However, the City changed course shortly thereafter and denied Ainley's refund requests for franchise fees paid prior to July 1, 2013.

On January 31, 2014, Ainley filed a petition, which they amended on December 12, 2014, claiming unjust enrichment and seeking a writ of mandamus ordering the City to refund the amount Ainley had paid in franchise fees. On February 3, 2014, the City passed ordinances 6-14, 7-14, and 8-14 (collectively the 2014 ordinances), which amended the 2003 ordinances. The 2014 ordinances amended the refund section of the 2003 ordinances and added a section that voided any claim for a refund for fees paid prior to July 1, 2013, that had not already been paid.

On December 8, 2014, the City filed a motion for summary judgment, which asserted the City's ordinance was a legitimate legislative act and effectively extinguished Ainley's claim for refund of fees prior to July 1, 2013. Ainley filed a cross-motion for summary judgment, which argued the City's ordinance was a retroactive tax that violated substantive due process and equal protection principles.

On July 1, 2015, the district court issued its ruling. Initially, the court discounted the City's argument:

> The City cannot retroactively impose a rule or ordinance that prohibits the return of the fees by limitation of time. . . . The City argues that the money has already been used and the source of the funds necessary for the return of the collected fees is not available. This is not a defense, nor is it logical. The City cannot collect the fees against these entities. It bears not on the decision for its return, that the City has already spent the fees.

Yet, the court ultimately found the City's 2014 ordinances were proper as "corrective ordinances" or curative acts.

> The reason it is proper relates to the nature of the City's obligation as a steward of the residents' taxes. To put the City in a position to have to now conjure revenues to replace what has already been

taken and spent, places a very heavy burden on the City and its financial management.

Accordingly, the court granted summary judgment in favor of the City and denied Ainley's cross-motion. Ainley appeals.

II.     Standard of Review

Appellate courts review decisions regarding motions for summary judgment for errors at law. *Estate of Harris v. Papa John's Pizza*, 679 N.W.2d 673, 677 (Iowa 2004). Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Iowa R. Civ. P. 1.981(3). "In determining whether this standard has been met, the record must be viewed in the light most favorable to the nonmoving party." *Travelers Indem. Co. v. D.J. Franzen, Inc.*, 792 N.W.2d 242, 246 (Iowa 2010).

III.     Discussion

A.     Curative Act

Ainley argues the district court erred in determining the City's 2014 ordinances were proper as curative acts. Ainley claims the 2014 ordinances do not qualify as curative acts because the prior ordinances were not illegal or void for any reason. The City asserts it had the power to terminate Ainley's claims under the legislative power to tax.

Legislatures have the "power to cure defects in acts by local government[s] that are undertaken without authority or without compliance with the requirements for exercising authority." *Zaber v. City of Dubuque*, 789 N.W.2d 634, 640–41 (Iowa 2010). "A curative act is a statute passed to cure defects in

prior law, or to validate legal proceedings, instruments, or acts of public or private administrative authorities." *Id.* at 644 (quoting 2 Norman J. Singer & J.D. Shambie Singer, *Statutes and Statutory Construction* § 41:11, at 503 (7th ed. 2009)). While many legislative acts target a perceived defect in prior law, "[t]he type of defect addressed by a curative act, as defined for purposes of retroactivity analysis, is a failure of the prior legislation to conform to existing legal requirements." *Id.* Unless the prior act was illegal or void, any subsequent remedial act cannot be classified as curative. *Id.* at 644–45.

In *Kragnes v. City of Des Moines*, 714 N.W.2d 632, 633 (Iowa 2006), a resident of Des Moines sued the city claiming the franchise fees the city assessed for gas and electric utilities exceeded the level allowed by Iowa law and, therefore, amounted to illegal taxes. Our supreme court found the city had the power to assess franchise fees, but "any franchise fee charged by a city must be reasonably related to the city's administrative expenses in the exercise of its police power." *Kragnes*, 714 N.W.2d at 642. Accordingly, the court held that franchise fees that were not "reasonably related to the city's administrative expenses" were illegal taxes and must be disallowed. *Id.* at 643.

In *Zaber*, our supreme court found an act to be curative where the legislature enacted a statute that retroactively authorized franchise fees for various utilities and cable television services. 789 N.W.2d at 642. The fees collected by the city and paid by taxpayers in *Zaber* were held to be illegal taxes, as was the case in *Kragnes*, because they exceeded the level authorized by Iowa law. *Id.* at 636–37. Yet, the court in *Zaber* upheld the retroactive authorization of the fees because authorization was within the power of the

General Assembly at the time the fees were collected. *Id.* at 642. Because the prior imposition of the tax was illegal, the court determined the retroactive authorization by the legislature qualified as a curative act. *Id.*

In this case, there is no dispute the City's prior acts—the 2003 ordinances—were neither illegal nor void. The City adopted a franchise fee based on a percentage of gross revenue, as it was authorized to do by Iowa law. *See* Iowa Code § 364.2(2) (2003); *see also* Iowa Code § 364.2(4)(f) (2003) (specifically referencing franchise fees). While the City amended the 2003 ordinances with the 2014 ordinances, by eliminating previously allowed refunds, the 2014 ordinances did not correct "a failure of the prior legislation to conform to existing legal requirements." *Zaber*, 789 N.W.2d at 644. The 2003 ordinances were legal and valid as originally adopted; therefore, the 2014 ordinances cannot be classified as curative acts. Rather, the 2014 ordinances are retroactive taxes.

### B.    Substantive Due Process

Ainley next argues its substantive due process rights were violated because the 2014 ordinances were retroactive taxes. In response, the City first argues Ainley failed to preserve error on its substantive due process claim.

### i.    Error Preservation

The City argues Ainley failed to preserve error on the substantive due process claim. The City claims the district court did not consider the issue of a substantive due process violation and Ainley failed to move to amend or enlarge the ruling under Iowa Rule of Civil Procedure 1.904(2). Ainley asserts error was preserved on the substantive due process issue and points to the language used

in the district court's order as evidence the district court considered and rejected its claim.

"It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

> However, it should be emphasized that the foregoing rule is not concerned with the substance, logic, or detail in the district court's decision. If the court's ruling indicates that the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is "incomplete or sparse," the issue has been preserved.

*Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012). Error may be preserved even if "the record or ruling on appeal contains incomplete findings or conclusions." *Meier*, 641 N.W.2d at 539.

We agree with Ainley; the language and substance of the district court's order indicate that it considered the substantive due process claim. The court referred to *Zaber* and described the City's 2014 ordinances as "corrective," or as termed in *Zaber*, "curative" acts. Once it determined the 2014 ordinances were curative acts, the court proceeded to quote heavily from *Zaber* and the substantive due process analysis. *See Zaber*, 789 N.W.2d at 646–53 (applying substantive due process test to a curative act). Indeed, the court's order discusses the duty of the City to protect tax dollars and the financial burden Ainley's refund requests would have placed on the City, which indicates the court engaged in a rational basis analysis. The court also quoted rational basis review language from *United States v. Carlton*, 512 U.S. 26, 30–31 (1994) ("Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such

legislation remain within the exclusive province of the legislative and executive branches." (quoting *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 729–30 (1984))). Although the district court did not explicitly use the term "substantive due process," it clearly considered the appropriate analysis and rejected Ainley's substantive due process claim. Accordingly, we conclude Ainley preserved error on this issue.

ii.      Rational Basis Test

On the merits of Ainley's substantive due process claim, the City argues the franchise fee refunds were purely legislative acts and it was free to amend its refund process and deny Ainley's refunds. It asserts: "[A r]efund is a matter of grace, and there is not any point or concept of law which compels any legislative body to grant, extend or continue any act of grace." We agree that it was within the City's power to change its franchise fee refund process prospectively, denying future refunds and thereby increasing its tax revenues. However, when a tax statute is retroactive, due process principles are implicated. *See Carlton,* 512 U.S. at 30; *Zaber*, 789 N.W.2d at 639. Therefore, the retroactive imposition of the 2014 ordinances must be analyzed under substantive due process principles.

Retroactive taxes do not violate due process principles if they are supported by a legitimate legislative purpose and furthered by rational means. *See, e.g.*, *Carlton,* 512 U.S. at 35 (upholding a retroactive tax which eliminated a deduction in the federal estate tax statute). Traditionally, under Iowa law, a two-part test was used to determine whether a retroactive tax offended due process principles. *City Nat'l Bank of Clinton v. Iowa State Tax Comm'n*, 102 N.W.2d

381, 384 (Iowa 1960). A retroactive tax passed the two-part test if: (1) it was not harsh and oppressive; and (2) the period of retroactivity was modest. *Id.* This was also the federal due process test for retroactive taxes. *See, e.g.*, *Welch v. Henry*, 305 U.S. 134, 147 (1938). However, in *Carlton*, the United States Supreme Court reformulated the two-part test as: (1) whether the purpose in enacting the retroactive application of the statute was illegitimate or arbitrary; and (2) whether the legislature "acted promptly and established only a modest period of retroactivity." *Carlton*, 512 U.S. at 32.

While our supreme court has yet to explicitly adopt the reformulated two-part test from *Carlton*, the *Carlton* reformulation is consistent with how the Iowa Supreme Court has described Iowa's traditional test. *See Zaber,* 789 N.W.2d at 645 ("As we have observed, due process requirements are satisfied 'simply by showing that the retroactive application of the legislation is itself justified by a rational legislative purpose.'" (quoting *Pension Benefit Guar. Corp.*, 467 U.S. at 729)); *Gen. Expressways, Inc. v. Iowa Reciprocity Bd.*, 163 N.W.2d 413, 424 (Iowa 1968) ("Generally-speaking, revenue-producing legislation which has a retroactive aspect is constitutionally permissible unless the same is so unfair, unjust and unreasonable, as to be in violation of the due process provisions of the constitutions."). Therefore, in applying the rational basis test to the retroactive tax here, we will use language compatible with *Carlton* and *Zaber*.

In order to determine whether retroactive application of a law is supported by a legitimate legislative purpose, we must first determine what the legislative purpose was. *Zaber,* 789 N.W.2d at 645 (discussing the purpose of the retroactive legislation). The City's purpose in adopting the 2014 ordinances was

to protect its finances and thereby its orderly administration. The refund applications spanned a number of years and totaled an amount the City did not feel it was able to pay. The City had already spent much of the fees collected on city services and wanted to avoid any economic hardship involved in processing Ainley's refunds. Protection of public monies is a legitimate legislative purpose. *See id.* at 645–46. However, "any time a city must pay out funds the public fisc is at risk." *Id.* at 657 (Wiggins, J., dissenting).

With the purpose of the 2014 ordinances to protect the public fisc, we must determine whether that purpose justifies the retroactive application of the ordinances. In *Zaber*, the court noted two key distinctions between curative acts and retroactive taxes. *Id.* at 646–47. Regarding curative acts, the money has already been collected and spent and the taxpayer was aware of the fee prior to entering the transaction. *Id.* at 646. Regarding retroactive taxes, usually the money has not yet been collected and the taxpayer was not aware of the fee going into the transaction. *Id.* at 646–47. The retroactive tax here is somewhat unusual because the money has been collected because the refund process required exempt parties to pay the franchise fees first and then apply for a refund. Additionally, while the franchise fees appeared on Ainley's utility bills, it was unaware that it was eligible for a refund.

This case presents an unusual situation to be labeled a retroactive tax, in that the fees have already been collected and spent and Ainley was unaware that it was exempt and eligible for a refund. Ainley paid the fees as part of its monthly utility bills and did not have the option of simply not paying the fees. While denying Ainley refunds, the City paid sizable refunds to other entities, some

stretching back to 2003. It appears the only difference in passing the 2014 ordinances to deny the Ainley refunds was the sheer number of entities requesting refunds and the amount of the refunds. While the City may not find it readily feasible to issue the refunds, the City's current budgetary considerations do not justify the retroactive application of the 2014 ordinances. When the initial ordinances were passed in 2003, the City was aware it was not entitled to retain all of the tax collected because a portion of that tax, for certain entities, would be subject to refund. Indeed, it was paying refunds each year. Yet, it did not segregate the exempt portion in its budgetary planning such that it could comply with its own 2003 ordinances.

As the district court noted, "[i]t bears not on the decision for its return, that the City has already spent the fees." On the contrary, denial of otherwise authorized refunds, resulting in the equivalent of the imposition of a retroactive tax under the guise of protecting public monies are both illegitimate and arbitrary purposes. Accordingly, the 2014 ordinances fail the first part of the substantive due process test for retroactive taxes.

We now turn to whether the City "acted promptly and established a modest period of retroactivity." *Carlton*, 512 U.S. at 32. Iowa has adopted a bright-line rule regarding the period of retroactivity for retroactive taxes. *Shell Oil Co. v. G.D. Bair*, 417 N.W.2d 425, 431–32 (Iowa 1987) ("We have previously held that tax laws may be retroactively applied to affect receipt of income during the year of the legislative session preceding that of its enactment."). The period of retroactivity can extend "no further than two years, or up to the adjournment of the last previous legislative session." *City Nat'l Bank of Clinton*, 102 N.W.2d at

384. The 2014 ordinances denying the refunds established a period of retroactivity that extended back to the adoption of the franchise fee ordinances in 2003. This period runs afoul of Iowa's limitation on the period of retroactivity for tax laws. *See id.* Accordingly, the City did not adopt a modest period of retroactivity, and the 2014 ordinances fail the second part of the substantive due process test for retroactive taxes.[2]

### C. Equal Protection

Because we hold the City's 2014 ordinances violated substantive due process and consequently reverse, we decline to address Ainley's equal protection claim.

### IV. Conclusion

Because we conclude the 2014 ordinances adopted by the City were a retroactive tax, and not a curative act, and agree the ordinances violated Ainley's substantive due process rights, we reverse the district court and remand for entry of judgment on Ainley's cross-motion for summary judgment and for further proceedings consistent with this opinion.

**REVERSED AND REMANDED.**

Vaitheswaran, J., concurs; McDonald, J., dissents.

---

[2] Ainley conceded at oral argument that a five-year statute of limitations applies to Ainley's refund claims. *See* Iowa Code § 614.1(4).

**MCDONALD, Judge. (dissenting).**

I concur in the majority's conclusion that the ordinance at issue is not a "curative act" within the meaning of our case law. As relevant here, a curative act is one passed "to validate legal proceedings or acts of public administrative authorities." *Zaber v. City of Dubuque*, 789 N.W.2d 634, 640 (Iowa 2010) (internal quotation marks and citations omitted). The essence of the curative act is that it "cure[s] defects in acts by local government that are undertaken without authority or without compliance with the requirements for exercising authority." *Id.* at 641. As the majority notes, the legislature had already provided municipalities with the authority to impose a franchise fee. The municipality also had the authority to exempt certain sales from the franchise fee. The 2014 ordinance thus did not provide authority to assess or otherwise validate the city's franchise fee—the authority already had been given. While the city is correct that the 2014 ordinance was intended to remedy a concern raised by the plaintiffs' claims for rebates, the remedial purpose of the statute does not make it a "curative act" within the meaning of our case law. *See United States v. Carlton*, 512 U.S. 26, 36 (1994) (O'Connor, J., concurring) (noting that "[e]very law touching on an area in which [the legislative body] has previously legislated can be said to serve the legislative purpose of fixing a perceived problem with the prior state of affairs"); *Zaber*, 789 N.W.2d at 643-44 (explaining the distinction between the "curative nature" of a statute—"the correction of an unanticipated problem in the original legislation"—and "whether the statute was classified as a curative act for purposes of retroactivity analysis"). The curative-act doctrine is inapplicable here.

I respectfully dissent from the majority's conclusions that the 2014 ordinance is a retroactive tax, that application of the 2014 ordinance violated the plaintiffs' substantive due process rights as a matter of law, and that this matter should be remanded with instruction to enter judgment in favor of the plaintiffs. A retroactive tax is one that that "imposes a new tax or liability on past transactions." *Zaber*, 789 N.W.2d at 642. The hallmark of a retroactive tax is "one that is being assessed and collected *after enactment of the new statute*, i.e., the tax is imposed *after* the event being taxed has occurred." *Id.* at 645. The 2003 ordinances imposed a franchise fee, exempted certain sales from the franchise fee, and provided a mechanism for the rebate of fees collected on exempt sales:

> The fee imposed by Sec. 1 shall not apply to any sale . . . that is exempt under Iowa Code § 422.45 from the tax imposed by Iowa Code § 422.43 and in computing the amount of the fee, the Company shall not include such sales, unless it is impracticable to do so, in which event the City Manager may provide for a rebate of the amount of the fee for such exempt sales . . . to the Company's customers.

In 2014, after the plaintiffs filed suit, the city amended the prior ordinances as follows:

> (1) Effective July 1, 2013, the fee imposed by Section 1 of Ordinance No. 59-03, as amended by Section 1 of Ordinance No. 76-03 and Section 1 of Ordinance No. 8-10, shall not apply to any sale of natural and mixed gas by the Company that is exempt under Iowa Code Sec. 423.3 from the tax imposed by Iowa Code Sec. 423.2 and in computing the amount of the fee, the Company shall not include such sales, unless it is impracticable to so, in which event the City Manager shall provide a rebate of the amount of the fee for such exempt sales of natural and mixed gas to Company's customers provided a written request is submitted by a customer to the City Manager in the City's fiscal year (July 1 – June 30) in which the customer pays such fees.

(2) Any rebate of franchise fees which may have been available under any prior amendment or ordinance which was not paid prior to July 1, 2013, is declared void and any claim for any such rebate shall not be honored or paid by the city.

The 2014 amendment does not assess a new franchise fee and apply it to past conduct. The 2014 amendment does not repeal the prior exemption and make the repeal retroactive. To the contrary, the 2014 amendment maintains the tax exemption for certain sales. The 2014 amendment also maintains a process to allow customers to claim rebates for exempt transaction. It is unclear to me how an ordinance that does not impose a tax, that maintains a prior tax exemption, and that allows for a rebate can be considered a retroactive tax. *See Burlington N. R.R. Co. v. Strackbein*, 398 N.W.2d 144, 147 (S.D. 1986). The retroactive-tax doctrine is inapplicable here.

What is at issue in this case is the legality of the city's limitation of the plaintiffs' remedy in obtaining a rebate of franchise fees voluntarily paid for years without protest. The 2014 ordinance limits the plaintiffs' remedy in two respects. First, it imposes a procedural requirement that the party seeking a rebate file a written request during the fiscal year in which the fees were paid. This limitation is akin to a statute of limitations. Second, the 2014 ordinance declares void any claim for rebate not paid prior to July 1, 2013. This limitation is akin to a statute of repose. There is little doubt the city had the right to impose a limitation period and a period of repose. The more difficult question is whether the 2014 ordinance lawfully could be applied retrospectively to the plaintiffs after the plaintiffs already had made a claim and then filed suit under the prior ordinance.

The cases upon which the majority relies do not answer this more difficult question. But there are cases that shed light on the question. For example:

> Woodmoor argues that, if the two-year statute of repose applies, this application violates the prohibition against retrospective laws found in Colo. Const. art. II, § 11, by removing its vested right in a six-year repose period. We disagree.
>
> There is no vested right in remedies. The abolition of an old remedy, or the substitution of a new one, does not constitute the impairment of a vested right.
>
> Sections 39–10–113, C.R.S. (1993 Cum. Supp.) and 39–10–114(1), C.R.S. (1993 Cum. Supp.) are remedial. They provide a specific remedy—abatement and refund. This remedy does not exist independent of the statute because once taxes are paid, even when assessed erroneously or illegally, they cannot be refunded absent express statutory authorization. Hence, these remedies can be abolished or changed because there is no vested right in their operation.

*Woodmoor Improvement Ass'n v. Prop. Tax Adm'r*, 895 P.2d 1087, 1089 (Colo. App. 1994) (citations omitted). Similarly:

> The focus of a statute of repose is entirely different from the focus of a statute of limitations. The latter bars a plaintiff from proceeding because he has slept on his rights, or otherwise been inattentive. Therefore, it is manifestly unjust to tell somebody that he has X years to file an action, and then shorten the time in midstream. However, a statute of repose proceeds on the basis that it is unfair to make somebody defend an action long after something was done or some product was sold. It declares that nobody should be liable at all after a certain amount of time has passed, and that it is unjust to allow an action to proceed after that. In this case, for example, there was an attempt to sue the manufacturer for the allegedly defective design of a part of an aircraft that had been in service for some 23 years after it was first sold. While an injured party might feel aggrieved by the fact that no action can be brought, repose is a choice that the legislature is free to make.

*Lyon v. Agusta S.P.A.*, 252 F.3d 1078, 1086 (9th Cir. 2001). By way of further example. *See, e.g., Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc.*, 507 N.W.2d 405, 410 (Iowa 1993) ("The Constitution does not forbid the abolition of old rights recognized by the common law, to attain a permissible

legislative object. Thus, if the legislature can abolish a cause of action for a legitimate purpose, it also may prevent a cause of action from arising by enacting a statute of repose. Limitation periods are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the avoidable and unavoidable delay.") (alterations, quotations marks, and citations omitted); *Thorp v. Casey's General Stores, Inc.*, 446 N.W.2d 457, 463 (Iowa 1989) (holding statute "that deprived plaintiff of her cause of action does not fall within those categories of curative or emergency legislation that involve an overriding public interest and which can constitutionally be applied retroactively"); *State v. Simmons*, 290 N.W.2d 589, 594 (Iowa 1980) (refusing to give retrospective effect to amendment to statute of limitations to case already filed where the legislature did not intend retrospective effect); *Thoeni v. City of Dubuque*, 88 N.W. 967, 968 (Iowa 1902) ("It will be conceded that statutes of limitation, pertaining, as they do, to the remedy, may be extended or abbreviated by act of the legislature, and that, generally speaking, such changes may be made retroactive and applicable to existing rights. It is well settled, however, that, with but few exceptions, it is not competent for the legislature to cut off all remedy, and that the right to sue within the existing statute of limitations is property, which cannot be thus summarily destroyed."); *Harding v. K.C. Wall Prods., Inc.*, 831 P.2d 958, 967–68 (Kan. 1992) ("A statute of limitations extinguishes the right to prosecute an accrued cause of action after a period of time. It cuts off the remedy. It is remedial and procedural. A statute of repose limits the time during which a cause of action can arise and usually runs from an act of a defendant. It abolishes the cause of action after the passage of time

even though the cause of action may not have yet accrued. It is substantive. Thus, Kansas constitutional protection applies only to statutes of repose because they pertain to substantive rights."); *King v. Campbell Cty.*, 217 S.W.3d 862, 870 (Ky. Ct. App. 2006) (noting that where the legislature "has not attempted to withdraw legislation upon which taxpayers have relied in structuring their affairs, but has promptly sought to foreclose refunds" retroactivity concerns are not implicated); *Vogel v. Lyman*, 668 N.Y.S.2d 162, 164 (N.Y. App. Div. 1998) (holding amended statute of limitations "does not apply to bar actions . . . commenced prior to its effective date"); *Universal Film Exchs., Inc. v. Bd. of Fin. & Revenue*, 185 A.2d 542, 545 (Pa. 1962) ("At common law a voluntary payment of taxes, erroneously made, could not, in the absence of a statute, be recovered. It follows that since a State need not allow recovery of taxes or other moneys voluntarily but erroneously paid, it can impose reasonable restrictions on any recovery it does allow."); *State ex rel. Van Emmerik v. Janklow*, 304 N.W.2d 700, 705 (S.D. 1981) ("It is apparent here that petitioner's asserted right is not based on any substantial equity. The unauthorized tax had been mistakenly collected without interruption since 1969 and petitioner presumably shared in whatever public benefits the tax funded. Where an asserted vested right that is not linked to any substantial equity arises from the mistake of officers purporting to administer the law in the name of the State, the Legislature is not prevented from curing the defect in administration simply because the effect may be to destroy claims that would otherwise exist.").

To resolve this appeal, we do not need to resolve the ultimate issue of whether the city could lawfully restrict the plaintiffs' remedies in obtaining rebates

on grounds other than the curative-act doctrine. The parties did not raise or brief the issues in the district court and did not raise or brief the issues on appeal. To resolve this appeal, it is enough to say the district court erred in granting the city's motion for summary judgment on the ground the 2014 ordinance was a curative act. I would remand this matter for further proceedings not inconsistent with this opinion.